Conklin v. Dust.

---

## R. R. CONKLIN v. J. E. DUST.
### No. 87.

1. JUDGMENT BY DEFAULT—*Sufficient Application to Open.* Where a judgment is taken against a defendant by default, without other service than by publication in a newspaper, and the defendant appears within three years after the rendition of the judgment and gives notice to the plaintiff of his intention to make an application to open up such judgment, files a full answer to the petition, offers to pay all costs required by the court, and makes it appear to the satisfaction of the court, by affidavit, that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense, the court should open up the judgment and allow the defendant to make his defense to such action.

2. PARTITION FENCE—*Liability of Landowners.* Where a quar-
ter-section of land is owned by two persons, one owning the east
half thereof and the other the west half, and the party owning the
west half lives upon it and builds a stone fence wholly on his
own land and four feet west of the line separating said tracts of
land, there being no agreement, either expressed or implied, be-
tween the landowners that said wall is to be used or treated as a
partition fence, and a tenant occupying the lands of the party
owning the east half of said quarter-section, without the knowl-
edge or consent of the owner, runs the side lines of fence across
said four-foot strip, connecting them with the stone wall, and
the owner, immediately upon being informed of such fact, repudi-
ates the act of the tenant and refuses to accept such stone wall as
a partition fence, the tenant having no authority whatever to con-
nect said line fences and the stone wall, the owner of the west
half of such quarter-section cannot compel the owner of the east
half to accept the wall as a partition fence, pay the value of one-
half thereof, and keep one-half of such fence in repair.

MEMORANDUM.— Error from Elk district court; M.
G. TROUP, judge. Action in attachment by J. E. Dust
against R. R. Conklin. Judgment for plaintiff. De-
fendant brings the case to this court. Reversed. The
opinion herein, filed January 11, 1896, states the ma-
terial facts.

*Beardsley, Gregory & Flannelly*, for plaintiff in error.
*J. A. McHenry*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: J. E. Dust and R. R. Conklin were
the owners of a certain quarter-section of land situated
in Elk county, Kansas. Conklin owned the east half
of the quarter and Dust the west half. In 1888 Dust
erected a stone fence along the east side of his tract
of land and about four feet west of the line dividing
said tracts of land. Dust resided upon his tract of
land and inclosed and cultivated the same. Conklin
resided in Kansas City, Mo. His half of said quarter-

section was occupied and cultivated by a tenant named Marion Crews.   Some time in 1890 Marion Crews ran down the said line fences and across the four-foot strip on the east edge of Dust's farm and connected the same with the stone fence.   He was cultivating the land of Conklin on the east side, being the east half of the quarter-section, and, in fact, was using the stone fence as a partition fence.   Conklin first learned of these facts in August, 1890, by a letter written by Dust to a mortgage company of which Conklin was president.   Dust in the letter demanded payment for one-half of the cost of the fence.   Conklin immediately instituted an investigation of the matter and found that the fence was wholly on the land of Dust, about four feet west of the line, and refused to recognize the stone wall as a partition fence.   He bought material and immediately began the construction of a fence wholly on his own land along near the line between the east and west 80-acre tracts, and within 60 days had his own fence completed.   He repudiated all acts of Marion Crews, his tenant, done in connection with the stone fence, declaring the same to have been done without his knowledge or consent, and that said Marion Crews had had no right or authority to make such connection or to do any act in the premises that would be obligatory on him.

Dust gave notice that he would appear before the fence-viewers of the township in which the land was situated, to have them determine under the law which half of the stone fence Conklin should pay for, declaring it to be a partition fence.   Dust applied to two of the fence-viewers, who met and made their award in writing, awarding to Dust the sum of $120, as the amount that Conklin should pay for one-half of the fence, and assigning a certain portion of the fence to

be kept up and maintained by Conklin. Conklin refused to recognize the stone wall as a partition fence, or to pay the award of the fence-viewers.

On the 22d day of August, 1891, Dust began a suit in attachment in the district court of Elk county against Conklin to recover the award of the fence-viewers, and levied upon the 80 acres of land owned by Conklin, being the east half of said quarter-section. Upon the filing of the petition and affidavit in attachment, an affidavit of nonresidence of Conklin was also filed, and notice by publication in a newspaper was made, fixing the answer day the 9th day of October, 1891. On the 12th day of October, 1891, proof of publication was filed, and the publication notice was approved by the court, judgment was rendered against Conklin by default, and the attached property was ordered to be sold to satisfy said judgment and costs of suit. Execution was issued on said judgment and levied upon Conklin's land, which had theretofore been taken in attachment, and the sheriff was proceeding under said execution to sell the same, when Conklin, on the 22d day of December, 1891, filed in said court an answer to plaintiff's said petition, and a motion, duly verified by affidavit, to set aside the judgment, for the reason that no service other than publication in a newspaper had been made on him. The affidavit alleged that during the pendency of this action he had had no actual notice thereof to appear in court and defend against the same, and that he had had no actual knowledge at all of the proceedings of said action until his attention was called to the advertisement of the sheriff's sale which was to take place on the 4th day of January, 1892. On the said 22d day of December, 1891, Conklin also gave notice in writing to the said Dust and his attorneys of record that

he intended, on the first day of the next term of the district court of Elk county, Kansas, to make application to said court to have the judgment theretofore rendered in said cause vacated ; that his motion for that purpose was duly verified, and a full answer to the petition in said cause had been by him filed. Conklin at the same time offered to pay all of such costs to the time of filing the answer and motion as the court might require. The answer, omitting caption, is as follows :

"Now comes the defendant, and for answer to the petition of the plaintiff filed herein denies each and every allegation therein contained, except such as are hereinafter specifically admitted.

"Further answering, this defendant admits that he is now the owner of the east half of the northeast quarter of section twenty-four ( 24 ), township thirty (30), range ten ( 10 ), Elk county, Kansas ; that at the time when defendant became the owner of said real estate there was a stone fence built near' the west line of the defendant's said land, but built wholly upon the west half of said quarter section, which was, as this defendant is informed and believes, and upon information and belief alleges the fact to be, at that time owned by the plaintiff herein ; that said stone fence was at least four feet to the west of the dividing line between the said lands of the plaintiff and defendant ; that this defendant did not make use of or in any way treat the stone fence as a partition fence ; that there was never any agreement between this defendant and plaintiff that such fence should be so treated ; that this defendant had no knowledge whatever that said fence was being used as a partition fence between said two tracts of land until some time in the month of September or in the month of October, 1890 ; that at that time and for some time prior thereto defendant's said land had been in possession of one Marion Crews, who was during all such time the tenant of this defendant, and that defendant gave to said tenant

neither authority nor right to use or treat such fence as a partition fence ; that the first advice or knowledge which came to defendant that there had been an at tempt on the part of this tenant so to use said stone fence, was given through a letter dated August 26, 1890, written by J. R. Dust to the Jarvis-Conklin Mortgage Trust Company (which was at that time the agent of the defendant in the leasing of said land ) at its office in Kansas City, Mo. ; that in and by said letter said Dust advised the said company that the said stone fence was built wholly upon his land and that the tenant of this defendant had built across the four feet and joined to the said stone fence without any knowledge on the part of the said Dust until the tenant had his crop in the ground.

" Defendant further says, that as soon as he received this letter he at once investigated the matter, and finding that the said stone fence was, as represented, wholly upon the land of the plaintiff, he at once notified the plaintiff that he refused to recognize said fence as a partition fence ; that he had not and would not authorize his tenant to treat the same as a partition fence, but that he, the defendant, would place a fence along the whole of the west line of his, the defendant's, said land ; that thereupon this defendant ordered posts and wire for the making of said fence ; that nevertheless, knowing all these facts, the said J. R. Dust attempted to compel this defendant to buy the half of said stone fence although the same was not a partition fence ; that after defendant had so commenced to build his own fence the said Dust caused proceedings to be instituted before two of the fence-viewers of said township to compel this defendant to pay the one-half value of said stone fence.

"This defendant admits the making of the finding by said fence-viewers as shown by 'Exhibit A,' attached to the plaintiff's petition ; that this defendant was represented at the hearing of the said fence-viewers, and that they were informed at that time of the facts hereinbefore set forth ; and that this defendant proposed to build a fence, as herein alleged, upon

his own land, along the west line thereof, and not in any way to use said stone fence for a partition fence, and that said viewers nevertheless made the findings as shown by said 'Exhibit A.'

"Defendant further says, that after such finding he proceeded with diligence to complete the fence proposed by him to be built along the west line of his land, and within 60 days from the time of the making of such findings the defendant had wholly completed said fence.

"Wherefore this defendant asks judgment for his costs."

On the 1st day of February, 1892, being the first day of the term of court after giving notice and filing the motion and answer, the application of the defendant below to open up the judgment and for leave to plead came on before the court for a hearing, and the following proceedings were had and entered of record:

"Now on this 1st day of February, 1892, this cause comes on to be heard on the application of the defendant to open up the judgment heretofore rendered in this action and be permitted to defend in the same, as provided by section 77 of the code; and comes the plaintiff in person, and by his attorney, A. M. Bowen, and the defendant comes by his attorneys, Beardsley & Gregory and Douthitt & Ayers. Thereupon the defendant, the applicant, shows to the court that he has given notice to the plaintiff of his intention to make such application; that he has filed a full answer to the petition; that he offered to pay all costs if the court required them to be paid; that during the pendency of this action he had no actual notice thereof in time to appear in court and make his defense, and that said judgment was rendered upon no other service than that of publication. Thereupon the plaintiff objects to the opening up of said judgment because the answer of said defendant so filed states no defense to the petition of plaintiff.

"Whereupon, the court, being fully advised in the premises, finds that said answer of said defendant does

not state a·defense to the petition of plaintiff, and it is thereupon ordered and adjudged that said application for the opening up of said judgment be overruled.    To which ruling of the court the defendant excepts.''

And within the time allowed by law the defendant below filed his motion to set aside the order refusing to open up the judgment, which motion was on the 4th day of February, 1892, overruled, and defendant below then and there duly excepted and made case for the supreme court.

There is only one question involved in this case for the consideration of this court, and that is, Does the answer of Conklin state facts sufficient to constitute a defense to the petition of plaintiff below?    Its determination involves an examination of the statute relating to partition fences between adjacent landowners. Section 8 of chapter 40 of the General Statutes of 1889 reads :

''The owners of adjoining lands shall keep up and maintain in good repair all partition fences between them in equal shares, so long as both parties continue to occupy or improve such lands, unless otherwise agreed.''

Section 22 reads :

''The word 'owner,' under the provisions of this act, shall be held to include and apply to occupant or tenant, when the owner does not reside within the county, and no proceedings under this act shall bind the owner, unless he shall be notified ; but he shall be liable to the occupant or tenant for the cost and expense of erecting and maintaining, under the provisions of this chapter, any partition fence upon the line of his land, unless there is a special agreement to the contrary.''

Section 23 reads :

''A person building a fence may lay the same upon

the line between his own land and the land adjacent, so that the fence may be partly on one side of such line and partly on the other; and the owner shall have the same right to remove it as if it were wholly on his own land."

Section 24 reads:

"The foregoing provisions concerning partition fences shall apply to fences standing wholly upon one side of the division line and used as a partition fence."

The statute in relation to partition or division fences does not undertake to define what shall constitute a partition fence, except in those cases where a fence is in use as a partition fence and so treated by the parties. The word "partition" signifies parting or dividing—to divide into distinct parts by line or walls. Can a wall or fence built by the owner of land, four feet distant from the line separating his land from that of another, without any agreement, either expressed or implied, be treated as a partition fence or wall, against the protest of the owner of the land adjacent? We do not think that a fence built four feet from the dividing line, where the same is not built under some agreement or understanding between the parties that it is to be a partition fence, or has been used by the parties as a partition fence, can be treated as a partition fence under the provision of our statute. We think the answer filed by Conklin contained a full and complete defense to the plaintiff's petition, and that the court erred in refusing to vacate the judgment. The defendant below had complied fully with section 77 of the code of civil procedure, and the judgment should have been set aside and the defendant below allowed to make his defense to the action of the plaintiff below.

The judgment is reversed, with direction to the district court to set aside the judgment and allow the defendant below to file his pleadings and defend against the action of the plaintiff below.

All the Judges concurring.