**Abdo Ahmad NAGI, Plaintiff-Appellant,**

v.

**UNITED STATES of America and City of Detroit, Defendants-Appellees.**

No. 83–1263.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1984.

Decided Jan. 2, 1985.

Jerome A. Moore (argued), Moore & Ricard, Detroit, Mich., for plaintiff-appellant.

Leonard R. Gilman, U.S. Atty., Carolyn Bell Harbin, Asst. U.S. Atty., Joseph N. Baltimore, Deborah Adams (argued), Detroit, Mich., for defendants-appellees.

Before EDWARDS and MARTIN, Circuit Judges; and WALINSKI, District Judge.*

WALINSKI, District Judge.

Plaintiff Abdo Ahmad Nagi appeals a judgment of the district court upholding a determination by the City of Detroit that he and his wife, Tamniah Nagi, were ineligible for replacement housing benefits pursuant to 42 U.S.C. § 4623.

Nagi and his wife were the owners of a home located in Detroit, Michigan, where they had lived with their five children since 1973. The Nagis immigrated to the United States in 1969 from Yemen Arab Republic. They became naturalized U.S. Citizens and Mr. Nagi was employed as a laborer by Chrysler Corporation.

In August 1979, the Nagi family traveled to Yemen for an extended visit with relatives. Mr. Nagi intended to remain in Yemen for the duration of a four-month leave of absence from work and Mrs. Nagi and the children intended to stay between 12 and 18 months. In December, Mr. Nagi and one son returned to Detroit, while Mrs. Nagi and the remaining four children stayed in Yemen.

On October 31, 1980, Nagi was notified by the Detroit Community and Economic Development Department (CEDD) that his home was subject to condemnation in connection with the proposed Central Industrial Park Project. He also received an offer to purchase his home from the City of Detroit. On November 5, 1980, a formal Notice of Displacement was sent to Mr. Nagi. This notice stated that Nagi might be eligible for benefits under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Relocation Act), 84 Stat.1894, 42 U.S.C. § 4601 *et seq.* Under the Relocation Act, individuals displaced from their homes as a result of federal and federally assisted programs are entitled to certain benefits in relocating to a new residence.

After receiving notification of the condemnation, Nagi and his family considered the option of permanently residing in Yemen. Nagi also asked the CEDD whether a home purchased in Yemen would qualify for a replacement housing allowance. By letter dated March 26, 1981, the CEDD informed Nagi that as a displacee he re-

* Honorable Nicholas J. Walinski, United States District Judge for the Northern District of Ohio, sitting by designation.

tained his eligibility for benefits should he choose to move to Yemen.

In April 1981, Nagi and one of his sons moved into an apartment in Detroit. Four months later, the Nagi family purchased a home in Shaar, Yemen. Immediately after the purchase, Mrs. Nagi and the four children with her moved into the new residence.

Subsequently, Nagi submitted a claim for replacement housing benefits of Fifteen Thousand Dollars ($15,000) in connection with the home located in Yemen. The CEDD denied his claim because Nagi and his wife, as individuals, had failed to satisfy the requirements of 42 U.S.C. § 4623(a)(1) and (2). This determination was upheld by the United States Department of Housing and Urban Development and the district court.

On appeal, Nagi contends HUD erred in failing to treat his family as a single unit eligible for benefits pursuant to section 4623. Moreover, appellant argues that HUD failed to consider a theory of "constructive occupancy" entitling him to relief under the Relocation Act.

■■■ The scope of review of agency actions is limited to a determination of whether HUD's findings are arbitrary, capricious, an abuse of discretion, not in accordance with the law and unsupported by substantial evidence in the record as a whole. 5 U.S.C. § 706(2)(A) & (E); *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 284, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974), *reh'g denied*, 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975); *Film Transit, Inc. v. Interstate Commerce Commission*, 699 F.2d 298, 300 (6th Cir.1983); *Coastal Tank Line, Inc. v. Interstate Commerce Commission*, 690 F.2d 537, 542–43 (6th Cir. 1982). If the agency considers the relevant factors and articulates a rational connection between the facts found and the choice made, the decision is not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law and will be upheld if supported by substantial evidence. *Bowman Transportation, Inc.*, *supra*, 419 U.S. at 285, 95 S.Ct. at 411; *O–J Transport Co. v. United States*, 536 F.2d 126, 129–30 (6th Cir.) *cert. denied*, 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976). "Substantial evidence" has been defined in the context of court review of an administrative agency decision as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). Review of HUD's decision, therefore, is limited to determining whether it is supported by substantial evidence, and whether it can be found on the total facts to be arbitrary or capricious. *See Ben Ruegsegger Trucking Service, Inc. v. Interstate Commerce Commission*, 600 F.2d 591, 593 (6th Cir.1979).

The Uniform Relocation Assistance Act and the HUD regulations promulgated in accordance with its mandate, make relocation benefits available to persons displaced by federal or federally assisted state projects. 42 U.S.C. § 4601 *et seq;* 24 C.F.R. Part 42. Section 101(6) of the Relocation Act defines a "displaced person" as "any person who ... moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property ... or as the result of the written order of the acquiring agency to vacate real property ...." 42 U.S.C. § 4601(6). The HUD regulations further defines a "person" as "any individual, family, partnership, corporation, or association." 24 C.F.R. § 42.75. Subchapter II, Section 203 of the Relocation Act sets out the basic eligibility requirements for payment of replacement housing benefits. 42 U.S.C. § 4623. In relevant part it states:

(a)(1) In addition to payments otherwise authorized by this Title, the head of the Federal agency shall make an additional payment not in excess of $15,000 to any displaced person who is displaced from a dwelling actually owned and occupied by such displaced person for not less than

180 days prior to the initiation of negotiations for the acquisition of the property.

\* \* \* \* \* \*

(a)(2) The additional payment authorized by this subsection shall be made only to such a displaced person who purchases and occupies a replacement dwelling which is decent, safe and sanitary not less than the end of the one year period beginning on the date on which he receives the Federal agency final payment of all costs of the acquired dwelling or on the day on which he moves from the acquired dwelling whichever is the later date.

42 U.S.C. § 4623. Similar language is contained in the regulations at 24 C.F.R. § 42.401.

On review of the Nagi claim for replacement housing benefits, the Detroit Community and Economic Development Department determined that Nagi and his wife, as individuals, failed to satisfy the eligibility requirements of 42 U.S.C. § 4623(a)(1) and (2). The CEDD concluded that plaintiff was displaced from his home in November 1980, however, he did not occupy the replacement housing in Yemen within the applicable one year period. The CEDD also found that although Mrs. Nagi satisfied the replacement dwelling occupancy requirement, she did not satisfy the preliminary prerequisite of displacement. The agency concluded further that the Nagis could not be treated as a family unit under the Relocation Act in view of the fact that separate tenancies had been established by Mr. and Mrs. Nagi.

Nagi argues on appeal that the CEDD decision to deny his family replacement housing benefits violates the spirit and intent of the Uniform Relocation Assistance Act. It is further argued that the CEDD's mechanical interpretation and application of the regulations issued by HUD in the instant case runs counter to the Congressional objectives of the statute. This Court agrees.

■ The declared policy of the Uniform Relocation Assistance Act is to "establish a uniform policy for the *fair and equitable treatment* of persons displaced as a result of federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries ...." 42 U.S.C. § 4621 (emphasis added). The language and origins of the Relocation Act demonstrate that Congress intended to provide uniform relief from the economic dislocation which occurs in the acquisition of real property for federal or federally assisted programs. *Alexander v. United States Department of Housing and Urban Development,* 441 U.S. 39, 51, 99 S.Ct. 1572, 1581, 60 L.Ed.2d 28 (1979).

The United States Supreme Court examined the occupancy requirements of Sections 203 and 204 of the Relocation Act [42 U.S.C. §§ 4623 & 4624], which authorizes replacement housing payments for dislocated homeowners and tenants, in *Alexander v. United States Department of Housing and Urban Development,* 441 U.S. 39, 99 S.Ct. 1572, 60 L.Ed.2d 28 (1979). After review of the Relocation Act's legislative history and language, the Supreme Court stated:

> These sections provide benefits only to displaced persons who occupied their dwelling for a prescribed length of time "prior to the initiation of negotiations for the acquisition of the property." 42 U.S.C. § 4623(a)(1). Congress drafted these occupancy requirements to exclude from coverage persons who otherwise might attempt to obtain substantial relocation benefits by moving onto property after the acquisition process has begun.

*Id.* at 61, 99 S.Ct. at 1586 (footnotes omitted). The occupancy requirements of the Relocation Act were clearly intended to exclude speculators and absentee landlords from benefiting under the Act. Thus, the Relocation Act was intended to extend benefits uniformly to persons displaced "as a result of" federal or federally assisted programs.

■ The decision of the CEDD in the instant case is contrary to the Relocation Act's declared policy of fair and equitable treatment for displaced persons. The

record is clear that Mr. and Mrs. Nagi were displaced from their home of seven years as a result of federal or federally assisted programs. The CEDD, however, determined that Mr. and Mrs. Nagi had established separate tenancies. Treating Mr. and Mrs. Nagi as individuals, rather than a family unit, CEDD found that neither satisfied the occupancy requirements. The CEDD determination as to separate tenancies in this case ignores the language of the HUD regulations and the policy foundations of the Relocation Act. The applicable HUD regulation defines the term "person" as:

> [A]ny individual, *family*, partnership, corporation, or association. For purposes of Subparts E, F, G, H, and I, two or more individuals, whether or not they are members of the same family, who live together in a single family dwelling and are displaced from such dwelling, shall be regarded as one person, unless the State agency determines that separate tenancies exists.

24 C.F.R. § 42.75 (emphasis added). The first sentence of this regulation directs an agency to treat a family as a person allowing only *one* claim for benefits. The second sentence indicates that two or more individuals who live together will also be allowed only *one* claim for benefits. The regulations, however, gives the state agency discretion to determine "that separate tenancies exist" and allow *two* claims for benefits "whether or not they are members of the same family." It appears clear that CEDD interpreted and applied this regulation to allow no claims for benefits in the Nagi family's case.

CEDD's mechanical application of the HUD regulations is contrary to Congress' intent to provide means to increase the available housing supply for displaced low and moderate income families and individuals. *See* 1970 U.S.Code Cong. and Adm. News, 5850, at 5852. The Relocation Act's occupancy eligibility requirements and the enforcing regulations were not intended to inject a strict physical presence requirement into the law. Rather, the fair and equitable treatment mandate of the Reloca-

tions Act directs state agencies to apply a "constructive occupancy" type exception in cases of unusual circumstances and equity. The constructive occupancy exception allows a displacee to meet an occupancy requirement, whether the requirement of section 203(a)(1) or, as here, section 203(a)(2), when the displacee is able to establish that he considered the dwelling his home and, but for economic or other circumstances beyond his control, would have met the occupancy requirements. *See Ledesma v. Urban Renewal Agency of City of Edinburg*, 432 F.Supp. 564 (S.D.Tex.1977). We find that CEDD's application of the HUD regulations in denying relocations benefits is contrary to the policies of the Relocation Act. Accordingly, the CEDD denial of relocation benefits to the Nagi family is not in accordance with the law.

■ Moreover, we conclude that CEDD's determination as to the existence of separate tenancies was not based on substantial evidence. The plaintiff and his family should have been considered as a family unit under the Relocation Act. In August 1979, the family traveled to Yemen for an extended visit. Mr. Nagi intended and did return to Detroit at the end of his four-month leave of absence from work. Mrs. Nagi and four children intended to return to Detroit after a stay of 12 to 18 months. Mrs. Nagi's plans to return were changed after the Notice of Displacement informed the family that their home of seven years was subject to condemnation. After receiving word from the CEDD that displacement benefits would be available for a replacement dwelling in Yemen, the Nagi family purchased a home in Yemen. Mrs. Nagi and the children moved in immediately and Mr. Nagi planned to move permanently to Yemen sometime after August, 1981. (CEDD Record, at 39). In November, 1981, the CEDD denied Mr. Nagi's claim for replacement housing benefits. (CEDD Record, at 19).

Thereafter, Mr. Nagi found that because of the denial of replacement housing benefits, he was economically unable to join his

family and had to continue working in Detroit to support his family and their new home in Yemen. Nagi appealed the CEDD decision and in his written appeal stated the following:

> I am in the process of paying the money my wife and I borrowed to pay the cash payment for the dwelling in Yemen since the seller insisted on paying for the house in cash only. Furthermore, the survivability of my family in Yemen depends on my income in the U.S. If I go to Yemen I will be unable to pay the money that we owe and I will be unable to support my family due to the lack of jobs in Yemen.

(CEDD Record, at 15–18). Surprisingly, on appeal Mr. Nagi's statement as to the economic hardship caused by the denial of benefits was repeatedly relied upon as proof of his intent to remain in Detroit. (Transcript at 22–23). Conversely, the chronology of events clearly indicate that the denial of benefits *caused* Mr. Nagi's failure to occupy the acquired dwelling within a year, rather than his decision to stay precipitated the denial of benefits. The CEDD could not have relied on the statement of intent for its decision since the statement was given after denial of benefits occurred. Furthermore, the record lacks any evidence of divorce or legal separation in the Nagi family which could support the CEDD's finding of a split family unit. The agency's determination as to the existence of separate tenancies under these facts and circumstances was not based on substantial evidence.

We reverse and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.