**Percy J. SKAGGS, et al., Plaintiffs,**

**v.**

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 90–180.**

United States District Court,
E.D. Kentucky,
Ashland.

Oct. 15, 1991.

Robert Woolery, for plaintiffs.

U.S. Atty., for U.S.

MEMORANDUM OPINION

PATTERSON, United States Magistrate Judge.

INTRODUCTION

Plaintiffs, Percy and Iris Skaggs, appeal an administrative denial of a $15,000.00

differential housing payment. This Court has jurisdiction upon consent and stipulation of the parties pursuant to 28 U.S.C. § 636(c)(1), (2). A bench trial was held before the undersigned on May 15, 1991. Upon the filing of the transcript of the trial proceedings, this matter is currently ripe for decision.

## SCOPE OF REVIEW

■ This case requires a determination whether the District Commander for the United States Army Corps of Engineers followed the directives of applicable law when he denied Plaintiff's request for specific relocation assistance. The Court's scope of review of the agency's actions is limited to a determination whether the findings are an arbitrary or capricious abuse of discretion, not in accordance with the law, and unsupported by substantial evidence in the record as a whole. 5 U.S.C. § 706(2)(A), (E); *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 284, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974), *reh'g denied,* 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975). If the agency considers the relevant factors and articulates a rational connection between the facts found and the conclusions made, the decision is neither arbitrary nor capricious. *Bill Transit, Inc. v. Interstate Commerce Commission,* 699 F.2d 298, 300 (6th Cir.1983). Therefore, a review of the agency's decision is limited to a review of the administrative record and a determination whether such decision is supported by substantial evidence. *Ben Ruegsegger Trucking Service, Inc. v. Interstate Commerce Commission,* 600 F.2d 591, 593 (6th Cir.1979). "Substantial evidence," as defined in the context of a court's review of an administrative agency decision, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

## THE FACTS

The facts in this case have been set out in detail in the administrative record [Record No. 9, Attachment]; therefore, only a summary of the facts will follow for convenient reference.

Plaintiffs, Percy and Iris Skaggs, owned and occupied 85.85 acres of land in Lawrence County, Kentucky. As part of the Yatesville Lake Project, Defendant divided Plaintiffs' land into three tracts, Tracts 2001, 2017, and 2103. Negotiations for the acquisition of these tracts were initiated in 1987 but as no agreement to price could be reached, the property was acquired by condemnation proceedings in January 1988. Estimated amounts for just compensation for these tracts were deposited with the Court totalling $86,000.00: $69,200 for Tract 2001; $10,200 for Tract 2017; and $6,600 for Tract 2103. A judgment was entered by this Court on the stipulation by the parties settling the three tracts for a lump sum of $185,000.00. Neither the judgment nor the stipulation set out separate values for either tracts or improvements.

Plaintiffs purchased a replacement farm which included a dwelling, a rented mobile home, a barn, and approximately twenty-five acres of land for $85,000.00. The District Commander determined the appraised value of the displacement dwelling (located on Tract 2001) at $25,100.00, the value of available comparable replacement housing at $41,500.00, and the value of the replacement dwelling at $53,000.00. Plaintiffs discussed a $15,000.00 replacement housing benefit with the relocation advisor.[1] The exact version of the conversation, however, is in dispute. According to Defendant, the relocation advisor explained to Plaintiffs that based upon these values they could be eligible for replacement housing benefits up to $15,000.00. Plaintiffs, however, contend they were assured the $15,000.00 housing benefit. Plaintiffs applied for a replacement housing benefit of $15,000.00

---

1. At the time $15,000.00 was the maximum payment for public housing; such payment has since been increased to $22,500.00 by Public Law 100–17. This figure, however, is no longer

in dispute as Plaintiffs concede, should they be eligible for housing displacement benefits, such benefit cannot exceed $15,000.00 (Tr. 13).

and the District Commander determined that no replacement housing differential payment was due.

## PROCEDURAL HISTORY

On November 20, 1989, in Ashland Civil Action Nos. 88–8, 88–12 and 88–13, the parties stipulated as to compensation and agreed that the sum of $185,000.00 "shall be full and just compensation and in full satisfaction in any and all claims of whatsoever nature against the United States of America." The Court incorporated said stipulation by a judgment against the United States of America and directed the sum of $185,000.00 be paid to Plaintiffs as compensation for Tracts 2001, 2017, and 2103. On January 22, 1990, Plaintiffs applied, with the Army Corps of Engineers, for replacement housing benefits. It was determined on March 5, 1990, that Plaintiffs were only entitled to $311.70 in incidental costs. Plaintiffs appealed this determination and by Opinion dated August 6, 1990, the office of the Chief of Engineers for the Army Corps of Engineers denied Plaintiffs appeal. Subsequently, on October 18, 1990, Plaintiffs filed the present complaint in this Court.

## THE LAW

"The Uniform Relocation Assistance and Real Property Acquisition Policies Act" of 1970, 42 U.S.C. § 4601, et seq. (Public Law 91–646), as amended by Title IV of the "Surface Transportation and Uniform Relocation Assistance Act" of 1987 (Public Law 100–17), sets forth the criteria for awarding relocation payments. The implementing regulation, 49 C.F.R. Part 24, Subpart E, "Replacement Housing Benefits" § 24.-401, provides:

(b) A. Amount of Payment.

The replacement housing payment for an eligible 180–day home owner-occupant may not exceed $22,500.00 (see also § 24.404). The payment under this subpart is limited to the amount necessary to relocate to a comparable replacement dwelling within one year from the date the displaced home-owner-occupant is paid for the dis-

placement dwelling, or the date a comparable replacement dwelling is made available to such person, whichever is later. The payment shall be the sum of:

(1) the amount by which the costs of the replacement dwelling exceeds the acquisition costs of the displacement dwelling, as determined in accordance with paragraph (c) of this section; and

(2) the increased interest costs and other debt service costs which are incurred in connection with the mortgage(s) on the replacement dwelling, as determined in accordance with paragraph (d) of this section; and

(3) the reasonable expenses incidental to the purchase of the replacement dwelling, as determined in accordance with paragraph (e) of this section.

The Engineering Regulation, 405–1–12, paragraph 6–27, "Differential Payment for Replacement Housing" provides:

The amount established as the differential payment for the replacement housing sets the upper limit of such payment. The District Engineer may determine the amount, if any, which when added to the acquisition costs of the dwelling acquired is necessary to purchase a comparable replacement dwelling either by establishing a schedule or by using a comparative method. The displaced person is bound by the method selected for use by the District Engineer.

C. Limitations.

(5) ... However, if the eventual purchase price of the entire property should exceed the government's appraised value, a proportionate share of any increase over the entire property's appraised value will be applied to the dwelling unless there is evidence testifying a different acquisition cost for the dwelling in relation to the value of the tract.

## ANALYSIS

Plaintiffs argue they are entitled to a differential payment for replacement housing in the amount of $15,000.00. Plaintiffs assert the following issues: (1) that

throughout negotiations, Plaintiffs were assured that they were entitled to a $15,-000.00 replacement housing benefit since the appraisal of the available comparable replacement housing was more than the appraised value of their dwelling; (2) that Defendant placed a "wholly arbitrary value upon Plaintiffs previous dwelling"; and (3) that the "highest and best use" standard as enunciated in the *Oldfield* case must be applied to evaluate Plaintiffs' property. These issues were addressed at each level of the administrative process; therefore, the only role of this Court is to review the District Commander's findings to determine whether such findings are arbitrary and capricious. *Ben Ruegsegger*, 600 F.2d at 693.

■ Plaintiffs assert that a relocation advisor promised them, up until entry of the final stipulation and judgment, that they would receive $15,000.00 in replacement housing benefits. Plaintiffs were given the opportunity to present evidence concerning this factual dispute at trial on May 15, 1991. Plaintiffs chose not to present any evidence, and did not object to the Court's preliminary ruling, that it was not necessary to hear evidence as it appears this case involves a question of law whether the agency correctly applied the appropriate regulations. Even assuming, however, that the Government made such a promise, Plaintiffs are not entitled to any benefits over the incidental costs of moving. The alleged representations by the Government are of no consequence because the terms of the stipulation apply and all prior negotiations are merged into the final stipulation and judgment. *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450 (6th Cir.1980).

Next, Plaintiffs argue that "Defendant placed a wholly arbitrary value upon Plaintiffs previous dwelling." This argument, however, is without merit. Plaintiffs purchased a replacement farm which included a dwelling, a rented mobile home, a barn and approximately twenty-five acres of land for $85,000.00. The value of the dwelling and homesite was appraised at $53,000.00. The implementing regulation, E.R. 405–1–12, sets out the method by which the District Commander must calculate the appraisal value of the displaced dwelling. To determine the replacement housing differential, the District Commander must consider the acquisition costs of the displacement property ($21,100.00), the value of the comparable replacement property ($41,500.00), and the actual cost of the replacement property ($85,000.00).[2] Plaintiffs argue that they are entitled to a replacement housing benefit because the differential between the appraised value of the displacement dwelling ($25,100.00) and the value of the comparable replacement housing ($41,500.00).

■ The District Commander, however, in applying the applicable regulations, properly determined that Plaintiffs were not entitled to any payment. Because the stipulation and judgment ($185,000.00) exceeded the appraised value of the acquired tracts ($86,000.00) by 215.1163% ($185,-000.00 equals 215.1163% of $86,000.00), the District Commander applied a proportionate share of the increase to the appraised value of the displacement dwelling. E.R. 405–1–2, paragraph 6–27c(5). In applying this formula, the District Commander determined that the adjusted acquisition price for Plaintiffs replacement dwelling is $53,-994.00 ($25,100.00 × 215.1163% = $53,994). Therefore, because the adjusted acquisition price ($53,994.00) exceeded the established price of both the comparable available dwelling ($41,500.00) and the actual replacement dwelling ($53,000.00), Plaintiffs were not entitled to replacement housing benefits. The administrative record establishes that the District Commander considered all relevant factors and applicable law and articulated a rational connection between the facts and his conclusions. Therefore, the decision to deny Plaintiffs replacement housing benefits is neither ar-

---

**2.** At no time during the administrative process or before this Court have Plaintiffs contested the appraised values of their property.

**646**

bitrary nor capricious. *Bill Transit, Inc.,* 699 F.2d at 300.

█ Finally, Plaintiffs argue that "the highest and best use of the property was for commercial coal development" and therefore the royalty capitalization formula must apply. *United States v. 103.38 Acres of Land, More or Less, Situated in Morgan County, Commonwealth of Kentucky, et al.,* 660 F.2d 208 (6th Cir.1981), hereinafter referred to as *Oldfield.* As the District Commander determined, the *Oldfield* case is factually distinguishable from the present facts. In *Oldfield,* the parties agreed that the highest and best use of the land was mineral extraction and it was undisputed that a ready market existed for the coal. *Oldfield,* 660 F.2d at 210. The highest and best use of the land in the present case, however, is vigorously disputed by the parties. In addition, the rule of *Oldfield* does not apply in this case because this case was never tried. The parties settled this dispute by stipulation; therefore, the terms of the stipulation and judgment must control. *Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co.,* 942 F.2d 1032 (6th Cir. (Tenn.) 1991) (stipulations voluntarily entered by parties are binding, both in District Court and/or Court of Appeals).

Following a careful review of the administrative record, it is clear that the District Commander's determination, that Plaintiffs are not eligible for replacement housing benefits, is supported by substantial evidence. Therefore, such determination is neither arbitrary nor capricious. Accordingly, the judgment of the District Commander shall be affirmed. *Nagi v. United States,* 751 F.2d 826 (6th Cir.1985).