RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0126P (6th Cir.)
File Name: 02a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THE KROGER COMPANY,
      *Plaintiff-Appellant,*

     *v.*

REGIONAL AIRPORT
AUTHORITY OF LOUISVILLE
AND JEFFERSON COUNTY,
      *Defendant-Appellee.*

No. 00-6552

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 95-00508—Charles R. Simpson III, District Judge.

Argued: March 8, 2002

Decided and Filed: April 11, 2002

Before: MOORE, COLE, and FARRIS, Circuit Judges.[*]

---

[*]The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1

---

**COUNSEL**

**ARGUED:**   Charles G. Middleton III, MIDDLETON REUTLINGER, Louisville, Kentucky, for Appellant. Michael D. Risley, STITES & HARBISON, Louisville, Kentucky, for Appellee. **ON BRIEF:** Charles G. Middleton III, Jason P.K. Underwood, MIDDLETON REUTLINGER, Louisville, Kentucky, for Appellant.  Michael D. Risley, Robert W. Griffith, STITES & HARBISON, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

FARRIS, Circuit Judge.  The Kroger Company appeals the district court's affirmance of the Regional Airport Authority of Louisville and Jefferson County's decision to partially reimburse Kroger for relocation expenses under the Uniform Relocation Assistance and Real Property Acquisition Policy Act of 1970 (URA), 42 U.S.C.A. §§ 4621-4638 (West 1995 & Supp. 2001).  Kroger contends (1) that the district court applied the incorrect standard of review, (2) that Kroger was inappropriately denied an evidentiary hearing, and (3) that the denial of certain expenses was unsupported by the record. We affirm.

**I**

In 1992, the Regional Airport Authority, a quasi-municipal entity implementing a relocation program pursuant to the URA, purchased Kroger's Crittenden Drive property for $9.1 million.  As a result, Kroger moved its distribution center operations to a new facility and applied for over $4 million in relocation benefits.  The RAA approved $727,692.  This appeal involves an additional $325,626 to which Kroger alleges it is entitled.

Kroger continues to seek reimbursement for seven items: (1) Permits and Licenses ($51,275); (2) Management Wages ($16,074); (3) Dixie Costs and Product Move to Peyton ($122,379); (4) Trailer Rental ($13,593); (5) Forklift Expense and Equipment Rental ($5,190); (6) Telephone and Data Cabling ($13,115); and (7) Consulting Fees ($104,000). The RAA denied these expenditures either because they were ineligible expenses, in excess of the reasonable and necessary amount, or submitted without sufficient documentation.

Before making this determination, the RAA met with Kroger several times, permitted Kroger to amend its claim twice, and reviewed seventy-six volumes of material submitted in support of the application. The RAA determination contained two detailed tables: a cost comparison that illustrated where the RAA's evaluation differed from Kroger's; and a summary of the claim for relocation expenses, which listed the reasons why particular expenses were approved or denied.

Kroger administratively appealed this determination to the RAA's General Manager, Robert S. Michael. In addition to reviewing the existing documentation, Michael considered Kroger's oral presentation and a written position statement. He informed Kroger that it was free to supplement the record with additional materials or legal authorities, but Kroger did not do so. In June 1995, Michael affirmed the RAA's determination.

Kroger sought review of the RAA determination at the district court. As an initial matter, the court found that the RAA did not err in denying Kroger's request for an evidentiary hearing, and that the determination was subject to the arbitrary or capricious standard of review. Later, the district court granted RAA's motion for summary judgment

on all categories of expenses except four.[1]  At the parties' request, those issues were remanded to the RAA for further development of the administrative record.  When the matter returned, the district court affirmed the RAA's subsequent determination to deny relocation expenses for the remaining issues.

Kroger here contends that the district court erred by not reviewing the RAA's determination *de novo* or for substantial evidence, by affirming the RAA's denial of an evidentiary hearing, and by affirming the RAA's denial of full reimbursement for the challenged seven items.

## II

### A.  Standard of Review

Kroger contends that the district court erred when it declined to review the RAA's administrative determination *de novo* or for substantial evidence.  Kroger is incorrect.

We review the district court's grant of summary judgment *de novo*, using the same standard to review the RAA's actions as the district court.  *See Clark v. Portage County, Ohio*, 281 F.3d 602, 603 (6th Cir. 2002).  Agency actions involving relocation assistance under the URA are subject to judicial review under the Administrative Procedure Act, 5 U.S.C.A. §§ 701 *et seq.* (West 1996 & Supp. 2001).  *See Nagi v. United States*, 751 F.2d 826, 828 (6th Cir. 1985); *see also M/V Cape Ann v. United States*, 199 F.3d 61, 63 (1st Cir. 1999); *Supreme Oil Co. v. Metro. Transp. Auth.*, 157 F.3d 148, 151 (2d Cir. 1998); *Ackerly Communications of Florida, Inc. v. Henderson*, 881 F.2d 990, 993 (11th Cir. 1989).  Thus, review

---

[1] The court found there was not enough information to determine whether the RAA's determination was arbitrary or capricious as to: (1) Pickup Truckloads; (2) Management Wages; (3) Mileage and Out-of-Pocket Expenses; and (4) Pension Expenses.  Kroger later abandoned the Pickup Truckloads claim.

As the district court noted, Kroger itself was uncertain about which consulting fees were eligible for reimbursement, much less reasonable and necessary.  The RAA did not act arbitrarily or capriciously in denying reimbursement for $104,000 of consulting fees Kroger requested.

## III

Kroger received all the process it was due under the URA, the APA, and the Constitution, and had ample opportunity to present arguments and documentation in support of its reimbursable relocation expenses.  The district court did not err in finding that the RAA had not acted arbitrarily or capriciously in denying the challenged expenditures.

**AFFIRMED.**

### 6.    *Telephone and Data Cabling*

Kroger contends that the RAA's denial of telephone and data cabling costs was arbitrary or capricious because Kroger provided adequate documentation and cost estimates for relocating telephone and data cabling. This contention is entirely unsupported.

Kroger provided no documentation of the actual expenses associated with the reinstallation of its telephone and computer systems. Instead, it purchased *new* telephone and computer systems, and then made an arbitrary estimate about what portion of the expenses related to reinstallation.[5] As the district court noted, "[t]he fact that Kroger believes its documentation to be adequate does not make it so." The RAA's decision to deny reimbursement for telephone and data cabling was not arbitrary or capricious.

### 7.    *Consulting Fees*

Kroger contends that the RAA's decision to deny $104,000 of a consultant's fee for insufficient documentation was arbitrary or capricious. This contention lacks merit.

Kroger's consultant Food Plant Engineering participated in the design and construction of Kroger's replacement facility. Kroger sought reimbursement for $104,000 of Food Plant Engineering's fee, arguing that its consultant had also worked with Kroger in analyzing how inventory should be relocated into the new facility. *See* 49 C.F.R. § 24.303(a)(8) (allowing reimbursement for professional services related to the movement of personal property). Instead of keeping track of that expense, Kroger submitted an invoice on which it marked those activities it believed, in hindsight, not to have been related to the design and construction of the new facility.

---

[5]Kroger submitted that 50% of total expenditure for a new telephone cabling system and 10% of its total expenditure for a new data cabling system should be reimbursed.

of the RAA's denial of relocation benefits is under the narrow standard set forth in the APA: we may set aside the RAA's findings, conclusions, or actions only if they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C.A. § 706(2)(A); *see Supreme Oil Co.*, 157 F.3d at 151; *Nagi*, 751 F.2d at 828.

"[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Even were the RAA's determination unsupported by the record, the proper remedy would be to remand to the agency for additional investigation or explanation, because "[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

The district court properly applied the arbitrary or capricious standard of review, rejected *de novo* review, and remanded any issues for which the record was incompletely developed. "*[D]e novo* review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions." *Camp*, 411 U.S. at 142. Neither situation applies here. The proceeding before the district court was not brought to enforce the RAA's determination, and the only reasonable deficiency suggested in the administrative proceedings is that the RAA inadequately supported its decision. Kroger was permitted to (1) submit enormous amounts of material, (2) meet multiple times with RAA officials, (3) amend its claim twice, and (4) supplement the record in any way it saw fit. There was no deficiency in the factfinding procedures that would warrant a *de novo* hearing in this matter.

For the first time on appeal, Kroger presents an issue of first impression in our circuit: whether an agency's denial of

relocation benefits under the URA should *also* be examined for substantial evidence under 5 U.S.C.A. § 706(2)(E). Section § 706(2)(E) provides that a reviewing court shall set aside those agency determinations found to be "unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute." The Supreme Court has noted that the arbitrary or capricious provision in § 706(2)(A) and the substantial evidence standard in § 706(2)(E) are separate standards, and that it would be consistent to find one violated while the other is not. *See Bowman Transp. v. Ark.-Best Freight Sys.*, 419 U.S. 281, 284 (1974); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Because no hearing is provided by the URA for relocation benefit claims and 5 U.S.C.A. §§ 556 and 557 are inapplicable, neither the URA nor the APA require a court to apply the substantial evidence standard.[2] *See Starke v. Secretary, U.S. Dep't of Housing*, 454 F. Supp. 477, 483 n.2 (W.D. Okla. 1977); *see also M/V Cape Ann*, 199 F.3d at 63 (applying only the arbitrary or capricious standard of 5 U.S.C.A. § 706(2)(A) in review of denied URA relocation benefits). *Compare Camp*, 411 U.S. at 140-41 ("[I]t is also clear that neither the National Bank Act nor the APA requires the Comptroller to hold a hearing or to make formal findings on the hearing record when passing on applications for new banking authorities. . . . [T]he proper standard for judicial review of the Comptroller's adjudications is not the

---

[2]To the extent our decision in *Nagi* can be construed otherwise, we note that the standard of review in *Nagi* was neither a point of contention nor determinative of the result. *See Nagi*, 751 F.2d at 830 (finding denial of relocation benefits to be both not in accordance with the law *and* unsupported by substantial evidence). Furthermore, as the discussion *infra* makes clear, it would make little difference whether we employed the arbitrary or capricious or substantial evidence standard to the RAA determination. We would affirm under either test.

in reimbursement expenses, and denied $122,379.40 in expenses because they were "in excess of what RAA determined to be reasonable (high end of consultant's recommendation)."

The RAA had the discretion to rely upon its expert's credible opinion. The decision to deny full reimbursement for Dixie costs and the product move to Peyton was not arbitrary or capricious.

### 4. *Trailer Rental*

Kroger contends that the RAA's denial of trailer rental costs due to insufficient documentation was arbitrary or capricious. Kroger is incorrect.

Kroger submitted a document indicating that it had rented more trailers in March 1993 than in February 1993, and sought reimbursement for the difference. From this document, it is impossible to discern whether the extra trailers were used in the move or during the ordinary course of business. The RAA's decision to deny reimbursement for trailer rentals was not arbitrary or capricious.

### 5. *Fork Lift Expense and Equipment Rental*

Kroger contends that the RAA's denial of fork lift expenses and equipment rentals for insufficient documentation was arbitrary or capricious. This contention fails for the same reason as the trailer rental claim.

As the district court noted, Kroger's documentation "did not allow the RAA to differentiate the portion of this expense attributable to Kroger's normal business activities and the portion of this expense attributable to its relocation activities." The RAA's denial of forklift expenses and equipment rentals was not arbitrary or capricious.

### 2.   *Management Wages*

Kroger contends that the RAA erred in granting only $120,000 of the requested $136,074 in management wages. We reject the argument.

The RAA's consultant, Gary Canales, stated that $90,000-$120,000 would be a reasonable amount for management fees.   The RAA then approved $120,000 "based on consultant's recommendation (high end of range)." After the district court remanded this issue to the RAA for clarification, Canales stated that he identified the number of pallets used and the number of labor hours reasonably required to move those pallets, and then converted labor hours into management hours.   After determining that the appropriate ratio of management hours to labor hours was 1:5, and accounting for out-of-pocket expenses, Canales increased the appropriate range for reimbursement from $74,000-$102,000 to $92,421.88-$120,000.

Agencies may consult their own qualified experts when specialists express conflicting views. *See Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989).  The RAA had the discretion to rely upon the reasonably supported opinion of its expert.  Its determination to deny full reimbursement of management wages to Kroger was not arbitrary or capricious.

### 3.   *Dixie Costs and Product Move to Peyton*

Kroger contends that the RAA's partial denial of Dixie costs and product move expenses should not be based on Canales' evaluation of reasonable costs.  Kroger is incorrect.

Canales stated that Dixie's wage rate was "on the high side," but after acknowledging that the demands of retail food businesses on food distributors would necessarily impact Kroger's ability to conduct an efficient move, he revised upward his estimate for Dixie costs and recommended a range of expenses of $235,000-245,000.  He based this figure on the actual number of pallets moved.  The RAA awarded $245,000

'substantial evidence' test which is appropriate when reviewing findings made on a hearing record.") (citation omitted), *with Bowman Transp.*, 419 U.S. at 284 (noting that "arbitrary or capricious" and "substantial evidence" standards applied to formal agency hearing involving an order of the Interstate Commerce Commission).  The district court did not err by not examining the RAA determination under the substantial evidence test.

### B.   **Denial of an Evidentiary Hearing**

Kroger contends that the RAA and the district court violated the URA, the APA, and the Due Process Clause by not holding an evidentiary hearing.  Kroger is incorrect.

The APA requires hearings only where an on-the-record adjudication is required by the appropriate substantive statute. *See* 5 U.S.C.A. §§ 551(13), 553-57, 704, 706; *Florida Power & Light Co.*, 470 U.S. at 744 ("The APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred.").  The URA states only that the head of an agency must establish regulations to ensure that a person whose claim for benefits is not approved in full may have the denial "*reviewed* by the head of the . . . agency having authority over the applicable program or project." 42 U.S.C.A. § 4633(b)(3) (emphasis added).  In promulgating the relevant URA regulations, the United States Department of Transportation acknowledged an agency's broad discretion to determine its review procedures:  "The appeal process is an entirely internal process of an agency.  The decision by the agency about the process must only conform to these regulations and whatever other administrative rules which the agency must follow."  54 Fed. Reg. 8912, 8918 (Mar. 2, 1989).   The regulations provide simply that an agency determination be made "[p]romptly after receipt of all information submitted by a person in support of an appeal." 49 C.F.R. § 24.10(g).

The RAA allowed Kroger to submit any relevant information it wished to tender. The RAA's general manager reviewed the voluminous record and permitted an oral presentation, a written position statement, and supplementation of the record. Kroger received all the process it was due under the URA, the APA, and the Constitution, and it was not entitled to an evidentiary hearing at any level. *See, e.g., Camp*, 411 U.S. at 483 n.3; *United States v. 131.68 Acres of Land, Etc.*, 695 F.2d 872, 876 (5th Cir. 1983); *Starke*, 454 F. Supp. at 483 n.2.

## C.  Denial of Reimbursement Expenses

Kroger contends that the RAA's determination was arbitrary or capricious because seven of its relocation expense requests should have been granted in full under the URA. Under the arbitrary or capricious standard, the party challenging the agency's action must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *McDonald Welding v. Webb*, 829 F.2d 593, 595 (6th Cir. 1987). The arbitrary or capricious standard is the least demanding review of an administrative action. *See Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). If there is any evidence to support the agency's decision, the agency's determination is not arbitrary or capricious. *See Oakland County Bd. of Comm'rs v. U.S. Dep't of Labor*, 853 F.2d 439, 442 (6th Cir. 1998).

### 1.  *Permits*

Kroger contends that the RAA should not have denied, as ineligible expenses, permits related to the construction of a new facility.[3] According to Kroger, the RAA inappropriately distinguished between expenses for permits related to

---

[3]Kroger sought reimbursement for (1) a building permit for construction of its new facility, (2) a mechanical permit, (3) an electrical permit, (4) a fire protection permit, and (5) an elevator permit.

personal property and permits related to real property because 49 C.F.R. § 24.303(a)(6) provides that moving and related expenses include "[a]ny license, permit, or certification required of the displaced person at the replacement location."

The RAA did not clearly and prejudicially violate the URA and its regulations by construing 49 C.F.R. § 24.303(a)(6) to exclude expenses for permits related to the construction of Kroger's new site. The prefatory language of § 24.303(a) limits reimbursement to "actual *moving* and related expenses, as the Agency determines to be reasonable and necessary." 49 C.F.R. § 24.303(a) (emphasis added). The subsections then set forth these actual moving and related expenses, all of which refer to personal property or ephemeral expenses incident to moving, such as searching for a replacement location. *See* 49 C.F.R. § 24.303(a)(1)-(a)(5) (referring to "personal property"), § 24.303(a)(7) (referring to "replacement value of property lost, stolen or damaged in the process of moving"), § 24.303(a)(13) (referring to "[s]earching for a replacement location"). Consistent with this subject matter, the second sentence of § 24.303(a)(6), the subsection on which Kroger relies, notes that "payment may be based on the remaining useful life of the *existing* license, permit, or certification." 49 C.F.R. 24.303(a)(6) (emphasis added). Thus, the subsection can be rationally interpreted to cover expenses incurred during the transitory act of moving, and not to cover expenses incurred in the construction of new facilities.[4]

There is adequate evidence to support the RAA's rational interpretation of 49 C.F.R. 24.303(a)(6) as applied here. The RAA's decision to deny reimbursement for Kroger's five construction-related permits was not arbitrary or capricious.

---

[4]Consistent with this interpretation, Kroger's permits might be reimbursable under 49 C.F.R. § 24.304(a)(6), which provides for reestablishment expenses. Kroger has, however, already been reimbursed the $10,000 maximum allowed for reestablishment expenses.