NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0317n.06

No. 10-4501

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Mar 21, 2012*

LEONARD GREEN, Clerk

JOHN S. MEACHAM; BARBARA MEACHAM;      )
                                        )
    *Plaintiffs-Appellants,*              )
                                        )
                                        )   ON APPEAL FROM THE
v.                                      )   UNITED STATES DISTRICT
                                        )   COURT FOR THE NORTHERN
CITY OF AKRON DEPARTMENT OF PLANNING    )   DISTRICT OF OHIO
AND URBAN DEVELOPMENT, et al.,          )
                                        )          O P I N I O N
    *Defendants,*                         )
                                        )
UNITED STATES DEPARTMENT OF HOUSING     )
AND URBAN DEVELOPMENT,                  )
                                        )
    *Defendant-Appellee.*                 )

BEFORE:    GUY, COLE, and ROGERS, Circuit Judges.

COLE, Circuit Judge.  The City of Akron appropriated John and Barbara Meacham's home in an eminent domain proceeding in order to redevelop a blighted area with federal funds.  Akron identified what it considered an adequate substitute for the Meachams' home, and offered nearly $80,000 in federal replacement housing assistance to cover the difference between the eminent domain jury award and the substitute home's purchase price.  The Meachams disagreed that the identified home was an adequate substitute, and, after having their administrative complaint denied, filed suit in the district court.  The district court thereafter granted the government's motion for

judgment on the record, affirming HUD's revised determination that the Meachams were not entitled to *any* replacement housing assistance. For the following reasons, we AFFIRM.

## I. BACKGROUND

The Meachams owned a home at 630 Diagonal Road in Akron, Ohio ("630 Diagonal"), in a blighted area known as the Crouse Redevelopment District. In 1998, there was a fire, and the Meachams moved out of the home. In 2001, they transferred ownership of the home to Thomas Faulknier.

Around the same time that the Meachams transferred their interest to Faulknier, the City of Akron ("Akron") was redeveloping property in the area as part of the Crouse Redevelopment Project, using funds from the Department of Housing and Urban Development (HUD). After an attempt in November 2003 to purchase the property directly failed, Akron attempted to appropriate 630 Diagonal in an eminent domain proceeding in Summit County Probate Court. On August 31, 2005, Barbara Meacham reacquired an interest in 630 Diagonal via a land installment contract with Faulknier.[1] The next day, the eminent domain proceeding commenced. On November 7, 2005, a jury awarded the Meachams $220,000 as just compensation for the appropriation.

---

[1]There is some question as to when the Meachams executed the land installment contract with Faulknier. There is a land installment contract between the Meachams and Faulknier, entered into on October 19, 2003, that appears in the administrative record. In 2007, the Meachams' attorney wrote to a HUD relocation specialist, stating that the 2003 contract was "inadvertently included in [the appropriate land contract's] place." He then enclosed "a correct copy of the referenced Land Contract" which was the 2005 contract. The 2003 contract does not appear in the Summit County sales information records.

Because HUD funds were used, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA) applied, which grants relocation assistance to displaced homeowners. 42 U.S.C. § 4621-38. The URA permits the head of the displacing agency to make a payment, in addition to the jury award, to assist the homeowner in acquiring a comparable replacement home. 42 U.S.C. § 4623(a)(1). Akron identified a home at 590 Diagonal Road that it deemed "comparable" to 630 Diagonal, and offered the Meachams an additional $79,000 to make up the difference between the jury award ($220,000) and the 590 Diagonal price ($299,000).

The Meachams believed that the property at 590 Diagonal was an inadequate substitute for their home, and requested that the $79,000 in replacement housing assistance be increased to $295,000. Akron's Department of Planning and Urban Development denied the request. The Meachams then contacted a relocation specialist at HUD, who directed Akron to reconsider and offer a more comparable home. After more than six months of negotiations between Akron, HUD, and the Meachams, HUD formally denied the Meachams' appeal for additional funds ("HUD's 2006 determination").

The Meachams sought judicial relief, appealing HUD's decision to the district court. *Meacham v. Woolford*, No. 06-CV-2447, 2007 WL 1087609 (N.D. Ohio April 9, 2007). HUD moved to remand for further agency action, contending "that it is now questionable whether [the Meachams] actually had an ownership interest in the property at issue." *Id.* at *3. At issue was whether the land contract between the Meachams and Faulknier occurred long enough before the initiation of negotiations between Akron and the Meachams to qualify the Meachams for

replacement housing assistance. The district court granted the motion and remanded the case for further inquiry by HUD. *Id.* at *4.

On remand, HUD came into possession of documents showing additional history of 630 Diagonal going back to HUD's initial purchase offer in November 2003. HUD determined that prior to this date, the Meachams had not occupied the home for several years because of the fire in 1998. Multiple appraisers, one in August 2003 and another two years later, commented that the home was vacant. HUD also had evidence that John Meacham had admitted, in November 2003, to not occupying the home because of the fire. In light of HUD regulations that require the homeowner to have been an occupant of the home prior to the formal initiation of negotiations, HUD made a final determination ("HUD's 2008 determination") that the Meachams were not displaced persons eligible for replacement housing assistance. The Meachams remained eligible for reasonable and actual moving expenses.

The Meachams appealed HUD's 2008 determination to the district court, insisting that they were eligible for replacement housing assistance, and that the decision was arbitrary, capricious, and unsupported by substantial evidence. HUD moved for judgment on the record, which the district court granted. This appeal followed.

## II. ANALYSIS

The Meachams argue that determinations of their occupancy and ownership status were erroneous, that the appeals process provided by HUD failed to comply with federal law and violated their constitutional due process rights, and that HUD's initial 2006 denial of the Meachams' request

for additional replacement housing assistance is not supported by substantial evidence. We address each in turn.

*A. Standard of Review*

We review de novo the district court's entry of judgment on the administrative record, but apply the same legal standard as the district court did in the proceedings below. *Whitaker v. Hartford Life & Acc. Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). "Agency actions involving relocation assistance under the URA are subject to judicial review under the Administrative Procedure Act, 5 U.S.C.A. §§ 701 *et seq.*" *Kroger Co. v. Regional Airport Auth. of Louisville*, 286 F.3d 382, 386 (6th Cir. 2002).

The Meachams assert that HUD's determinations must be viewed under a "substantial evidence" standard in light of *Nagi v. United States*, 751 F.2d 826 (6th Cir. 1985). We clarified *Nagi* in *Kroger*, reasoning that the "substantial evidence" standard need only be adopted by a reviewing court if the determination at issue followed a statutorily required hearing on the record. *Kroger*, 286 F.3d at 387. Because the URA does not provide for a hearing, we will set aside HUD's findings, conclusions, or actions "only if they were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* (quoting 5 U.S.C. § 706(2)(A)).

Our review under this standard is narrow, and is limited to the record upon which HUD relied. *Id.* Nonetheless, we must ensure that HUD "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted). Although our review must be "searching

and careful," we need not reverse solely because HUD's decision is "of less than ideal clarity." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 285-86 (1974) (citations omitted).

### B. HUD's 2008 Determination

HUD's 2008 determination reasoned that the Meachams did not qualify for replacement housing assistance because they failed to comply with governing HUD regulations. Eligibility for such assistance requires that the homeowner "[h]as actually owned and occupied the displacement dwelling for not less than 180 days immediately prior to the initiation of negotiations . . . ." 49 C.F.R. § 24.401(a)(1). The initiation of negotiations occurs upon "the delivery of the initial written offer of just compensation by the Agency to the owner or the owner's representative to purchase the real property for the project." 49 C.F.R. § 24.2(a)(15)(i).

#### 1. Initiation of negotiations

The date of the initiation of negotiations is the factual issue at the heart of the Meachams' complaint. The Meachams point to a letter from Akron, which reads that "[t]he effective date of this [notice of eligibility for HUD assistance] is September 13, 2005 which is the Initiation of Negotiations for your site." Given this letter, the Meachams argue, they need only to have owned and to be living in 630 Diagonal since mid-March of 2005. HUD's 2008 determination, meanwhile, insists that the initiation of negotiations took place in November 2003, when Akron offered to purchase 630 Diagonal from Thomas Faulknier, the owner of record at that time. This contention is supported by a letter from Akron to the Meachams' attorneys that outlines the negotiations that

took place on November 19, 2003, among Akron negotiators, John Meacham, and George Emershaw, an attorney who represented Faulknier and the Meachams.

The Meachams insist that the initiation of negotiations could not have taken place in 2003, because such a conclusion would violate HUD regulations. HUD requires that "[b]efore the initiation of negotiations[,] the real property to be acquired shall be appraised . . . and the owner, or the owner's designated representative, shall be given an opportunity to accompany the appraiser during the appraiser's inspection of the property." 49 C.F.R. § 24.102(c)(1). The Meachams contend that (1) there was no appraisal, and (2) if there was, there was no opportunity to accompany the appraiser; therefore, the initiation of negotiations could not have taken place in 2003.

A letter from Akron to Emershaw, dated March 10, 2004, states that Akron "has offered $145,000 for this property, which amount represents the fair market value of the property as determined by an MAI appraiser, and reviewed by another MAI appraiser." Evidence in the record also suggests that Akron attempted to contact Faulknier in June 2003, via certified mail, to inform him that he would have the opportunity to accompany the appraisers on the inspection of his property.[2]

HUD's determination that the initiation of negotiations took place in November 2003 therefore finds ample support in the record. Throughout 2003, Akron conducted an appraisal, attempted to contact the owner of record to notify him of his rights in the appraisal process, and conducted negotiations for the purchase of the land. 49 C.F.R. § 24.2(a)(15)(i) defines the initiation

---

[2]Faulknier was, throughout 2003, the owner of record of 630 Diagonal.

of negotiations as the date when the agency initially offers just compensation to the owner of the real property. Given that there is evidence in the record suggesting that an offer of $145,000 was made in 2003, HUD's determination that the initiation of negotiations took place in November 2003 has a rational basis and is neither arbitrary nor capricious.

*2. Occupation of 630 Diagonal prior to the initiation of negotiations*

In order to be eligible for replacement housing assistance, the Meachams must be able to show that they both owned *and* occupied 630 Diagonal prior to the initiation of negotiations. HUD did not base its 2008 determination on the ownership question, but instead focused on the occupation requirement. HUD noted that the Meachams "had not occupied the home for several years prior to November of 2003 because of a fire that occurred in June of 1998 at the property. When [Akron] sent the first appraiser out to the site in August 2003, the property was vacant, not occupied by [the Meachams]."

The Meachams maintain instead that they "constructively occupied" the home as it was being repaired for damage caused by the 1998 fire,[3] and insist that our decision in *Nagi* required HUD or Akron "to apply a constructive occupancy type exception in cases of unusual circumstances and equity." 751 F.2d at 830. HUD, meanwhile, points out that *Nagi* is only applicable when the displacee considered the dwelling his home, and would have met the occupancy requirement "but for economic or other circumstances beyond his control . . . ." *Id.*

_____

[3]The Meachams do not argue that the constructive occupation took place during the relevant 2003 period, but instead during the 2005 period, since they believe that the initiation of negotiations took place in 2005. In effect, they make no argument as to why they did not occupy the home immediately prior to November 2003.

As the district court noted, the Meachams "received the insurance proceeds from the 1998 fire at the Residence in 2001. These proceeds were not used to restore the Residence." Rather, the proceeds were used to rescue the home from foreclosure. The Meachams thus argue that they were unable to occupy the home, such that the constructive occupancy exception ought to apply. Alas, information submitted *by the Meachams themselves* to the district court belies their argument.

The Meachams provided information to the district court to prove that their home and the replacement home, 590 Diagonal, were not comparable. One such submission, a letter from a contractor who worked on 630 Diagonal after the fire, read "As of March, 2003, all mechanical, structural and major systems were restored and functioning properly." Another contractor wrote, "I had personally observed both in 2002 and later in September 2005 that all mechanical systems were functioning properly . . . . The overall general condition of the house including the 3rd floor was in my professional opinion in good living condition."

These statements tend to show that the home could have been lived in, in contrast to the Meachams' contention that the home was unfit for their occupancy. While we normally may consider only evidence that was before the agency, this does not preclude our consideration of the contractors' statements for two reasons. First, there is evidence that these materials were submitted to HUD prior to their 2008 determination. Second, it was the Meachams themselves who presented this evidence to the district court. The Meachams would have us consider their evidence when it is in their favor, but ignore it when it is not. We decline to engage in such compartmentalization.

Finally, there is evidence in the record that Faulknier occupied 630 Diagonal at the same time that the Meachams claim they were unable to do so. On September 17, 2003, Faulknier checked a

box on a mortgage loan application, indicating that he "presently occup[ied] [630 Diagonal] as [his] primary residence." The Meachams argue that this should be given limited weight, given that there is no signature on the document. But, a later document that refers to that lender's mortgage loan does bear Faulknier's signature.

Under the relevant standard of review, we must ensure that HUD examined the relevant data, and that its 2008 determination articulated a satisfactory explanation for its actions. Given the evidence in the record that the Meachams 1) did not live in 630 Diagonal immediately prior to the initiation of negotiations in 2003, and 2) were able to live in the home if they decided to do so, there is a rational connection between the facts HUD found and the choice it made.

## C. HUD's 2006 actions

The Meachams raise a number of arguments pertaining to the correctness of HUD's 2006 determination that denied them an increase in their replacement housing assistance. They assert that they should have been able to appeal directly to Akron, that their appeal within HUD was improper, that HUD engaged in improper ex parte discussions during their appeal, and that the compilation of the administrative record was unfair. They further argue that 590 Diagonal was not a comparable replacement dwelling. The district court's remand order was not a final, appealable order, so the Meachams are not precluded from raising these issues here. *See Schuck v. Frank*, 27 F.3d 194, 196 (6th Cir. 1994). But, any procedural irregularities are connected to HUD's 2006 determination. That decision is no longer in effect, given HUD's 2008 determination.

### III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.