HUGH GRIFFITH, *Appellant*, v. J. T. CARROTHERS *et al.*,
*Appellees.*

No. 17,293.

SYLLABUS BY THE COURT.

1. PARTITION FENCE—*Apportionment—Duty of Viewers.* In
settling a controversy between owners of adjoining lands as
to their rights in a partition fence, and where one of them
has voluntarily built the whole of the fence, the fence viewers
are authorized to assign to each a certain one-half of the
fence, which he will be required to maintain, and to ascertain ·
the value of the part assigned to the delinquent owner, and
for which he will be required to pay, but in making such
award the viewers may not consider or include anything in
excess of its value as a fence of construction from material
and of the height, size and character of a legal fence, allow-
ing nothing more than is reasonably necessary in material
and workmanship to make it appropriate to the purpose for
which it is designed.

2. —— *Same.* If he has built an extravagantly ornamental
or needlessly expensive fence, or has put in it more than is
necessary to make it a legal and practical fence for·the turn-
· ing of stock, the cost of such excess can not be recovered from
the other owner.

3. —— *Same.* And where a hedge has been planted and has
grown on the division line until it contains trees, sustained by
the soil of both farms, so large as to be suitable for tele-
phone poles and fence posts, the viewers are not warranted
in including the value of such trees in the award made
against the delinquent owner.

Appeal from Sumner district court.   Opinion filed
December 9, 1911.   Affirmed.

*J. T. Herrick, H. W. Herrick,* and *W. W. Schwinn,*
for the appellant.

*S. B. Amidon, C. E. Elliott,* and *W. T. McBride,* for
the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover an
award of $180 made by fence viewers after a view of a
hedge fence 160 rods long which had grown between

the farms of appellant and appellees. It appears that the hedge was planted by the predecessor in title of appellant, about thirty-five years ago, and, not being trimmed, Osage orange trees had grown in it large enough for telephone poles, fence and corral posts. The viewers, called under the fence law, divided the fence and assigned the north half of it to appellant as the share to be kept up by him and assigned the south half as the share to be maintained by appellees and assessed the value of their half at $180. Appellees, deeming the award to be too large, and that the viewers had not made it on the correct basis, refused to pay the award. Action was brought in the justice court and there a jury awarded appellant $40, and upon an appeal to the district court a verdict of $64.80 was returned in his favor. The appellant is here complaining of rulings excluding testimony offered by appellant that the hedge was worth more than $180, and, also, testimony to show that, in addition to its value as a fence, there was timber in it of considerable value and for which a recovery was sought.

The court restricted the evidence to the value of the hedge as a fence and instructed the jury that they could only consider the value of the fence for the purpose of turning stock. The court took a correct view of the statute and the rights of the parties. The statute contemplates the erection of partition fences designed to turn stock and prescribes the height and character of a legal fence that may be made from the designated materials commonly used for fencing. (Gen. Stat. 1868, ch. 40 et al., Gen. Stat. 1909, §§ 3728-3781.) In section 3729 of the General Statutes of 1909 (Laws 1873, ch. 88, § 1) it is provided that "all hedge fences shall be of such height and thickness as will be sufficient to protect the field or inclosure." The theory of the law is that owners of adjoining lands, that are occupied or improved, are under mutual obligations to maintain partition fences in equal shares. If either

owner does not build or repair his share of such fence it may be done at his expense by the adjoining owner. Or if an owner has voluntarily erected the whole fence, or more than his share, the other owner may be compelled to pay for the share assigned to him by the viewers, and the recovery of the ascertained value of such share will become a lien on his land. An agreement between owners of adjoining land, with respect to the partition fence, is just as effective as the decision of viewers in a compulsory proceeding and may likewise be made a matter of record in the office of the register of deeds. If a party builds the whole of a division fence, as he may, he is necessarily limited to one of the character known as a legal fence and to a reasonable selection and use of material and workmanship. He can compel the adjoining owner to contribute his share of a fence built out of materials and of the height, size and character of the fence prescribed in the statute and which is reasonably adapted to the purpose of restraining or turning ordinary stock. He can not build an unduly expensive or ornamental fence and impose the cost of it as a lien upon an unwilling neighbor. Contribution can only be enforced for a legally sufficient fence, one reasonably appropriate to turn stock, and neither viewers nor courts are warranted in considering or including in any award anything beyond its value as a fence. If he should plant and grow a privet hedge fence or erect an extravagantly ornamental stone wall ten feet high on the division line he could not expect the adjoining owner to contribute one-half of its cost.

The supreme court of Connecticut approved an instruction to the effect that a party might build or repair a partition fence so as to make it a legal one, "provided he acted reasonably and did not make it needlessly expensive, but that he would have no right in such case to be extravagant either in the materials used or in the workmanship; and that if the jury should

find that the fence so built by the plaintiff was not extravagant or needlessly expensive, but reasonable and proper, then in such a case they should presume that the fence viewers had valued the fence at its just value." (*Guyer v. Stratton,* 29 Conn. 421, 427.)

In an Ohio case, where a recovery was sought for one-half the value of a partition fence, which involved the character and quality of the fence, the court said:

"It is also to be observed in this connection, that whatever its character, the fence in question, in any case arising under the statute, is to be dealt with as *a fence.* It is to be appraised by the township trustees; but the question which it is their duty to determine, is not what the materials are worth for any other purpose, and not, necessarily, what the materials and labor cost, but what, in the condition in which they find it, is its value *as a fence.* This may or may not equal the cost, depending, among other things, upon what economy was used in its construction, the suitableness of the materials, the character of the work, and whether, by reason of decay or other cause, it has deteriorated in value." (*Robb v. Brachmann,* 24 Ohio St. 3, 11.)

That viewers are limited to the value of a fence reasonably sufficient was the view of the court in *Scott v. Jackson,* 93 Ill. App. 529, where it was remarked:

"Even if the viewers exceed their authority in prescribing the exact kind of fence to be built, yet if the owner notified does not build any fence at all, and if the fence built by the other owner is a legal fence, and answers the purpose for which the fence is designed, and it is not shown it cost more than a legal fence of any other kind, the party building the fence can recover its cost of the other owner." (Syl. ¶ 4.)

When viewers come to place a value on a fence, a share of which is to be charged to the adjoining owner, that "which it is their duty to determine, is not what the materials are worth for any other purpose, and not, necessarily, what the materials and labor cost, but what, in the condition in which they find it, is its value

as a fence." (19 Cyc. 474. See, also, *Miles v. Tomlinson,* 110 Iowa, 322, 81 N. W. 587; *Voelz v. Breitenfield,* 68 Wis. 491, 32 N. W. 757.) If he puts in a division fence more than is reasonably necessary he can not recover for its value, and can never recover more than its value as a fence.

The fact that trees, suitable for telephone poles and for fence posts, had grown in the hedge did not give appellant the exclusive ownership of them, nor warrant the viewers in assessing the value of all to appellees. These trees were sustained as much by the soil of appellees' farm as by that of appellant. These are no more the property of appellant than if fruit, nut-bearing or ornamental trees had grown in the hedge or on the division line along a board fence. They grew on the common property of both and, necessarily, belong to both. So far as appears, the hedge, from end to end, was of the same general character, and there were as many trees suitable for poles and posts in the half assigned to appellant as in the half assigned to appellees. Manifestly the appellant received his share of the timber in so much of the hedge as constitutes no part of the fence and, hence, he has no cause to complain. Trees so planted and nourished and sustained from the soil of appellees can not be treated as a part of the fence under the law, and the provision (Gen. Stat. 1868, ch. 40, § 23, Gen. Stat. 1909, § 3753) authorizing a person who has laid a fence on a division line to remove it is not applicable to trees and timber grown on the line as in this case.

The judgment of the district court is affirmed.