No. 83,036

ELLIOT M. KAPLAN and JEANNE T. KAPLAN, *Appellants/Cross-appellees*, v. BOARD OF COUNTY COMMISSIONERS, JOHNSON COUNTY, and MARSHALL A. PIECZENTKOWSKI and JANET N. PIECZENTKOWSKI, *Appellees/Cross-appellants*.

(3 P.3d 1270)

Opinion filed April 21, 2000.

*Dee W. James*, argued the cause for appellants/cross-appellees, and *Elliot M. Kaplan* and *Jeanne T. Kaplan* were on the brief pro se.

*Cynthia C. Dunham*, assistant county counselor, argued the cause and was on the brief for appellee/cross- appellant Board of County Commissioners of Johnson County.

*Barry D. Martin*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the brief for appellees/cross-appellants Pieczentkowski.

The opinion of the court was delivered by

ABBOTT, J.: This is a dispute between neighbors over fences. Appellants Elliot M. Kaplan and Jeanne T. Kaplan and appellees Marshall A. Pieczentkowski and Janet N. Pieczentkowski are owners of contiguous properties located in an unincorporated portion of Aubry Township in Johnson County, Kansas. The northern and eastern boundaries of the Kaplans' property border the Pieczentkowskis' property. The Kaplans own horses and longhorn cattle, which they keep at their property. The Kaplans' property is slightly less than 10 acres. They have 10 longhorn cattle and an unknown number of horses on the property.

On or about January 17, 1996, the Kaplans installed 200 linear feet of vinyl fence near part of the eastern boundary of their property (first fence) at a cost of $8.27 per linear foot, for a total cost of $1,655. In August 1996, the Kaplans erected a 388-linear-foot vinyl fence and a 632-linear-foot woven mesh fence near the balance of the eastern boundary of their property (second fence) for a total cost of $5,592.32. Both the first and second fences are located on the Kaplans' property approximately 6 inches from the eastern boundary line of the properties. Prior to the construction of the first and second fences, the east/west boundary line of the properties was not enclosed.

In approximately July or August 1997, the Kaplans made temporary repairs to an old fence near the north end of their property (third fence). The third fence is wholly located on the Kaplans' property. The Kaplans made the repairs to the third fence after receiving a letter from the Pieczentkowskis' attorney requesting that it be repaired to prevent the Kaplans' longhorn cattle from wandering onto the Pieczentkowskis' property. After the repairs were made, the Kaplans, by an August 19, 1997, letter to the Pieczentkowskis' attorney, sought reimbursement from the Pieczentkowskis for one-half of the cost of the repairs to the third fence. In that letter, the Kaplans indicated that they would be seeking contribution for the first and second fences erected the previous year. Further, the Kaplans indicated that they would be seeking contribution for the costs of a survey and installation of a new fence on the northern property line. The Pieczentkowskis refused to contribute.

On or about January 22, 1998, the Kaplans submitted an application to the Board of County Commissioners of Johnson County (Board) requesting that the Board act as fence viewers to settle the controversy among the parties. The Pieczentkowskis filed a response with the Board. The Board gave written notice to the parties that it would view the fences on May 11, 1998. The parties were also advised that they could submit additional written comments.

On May 11, 1998, all five members of the Board traveled to and conducted a fence viewing at the properties. The parties provided verbal comments to the Board during the viewing. There is no

transcript of the fence viewing. Following the fence viewing, the Kaplans and the Pieczentkowskis submitted additional written materials and comments.

On May 28, 1998, the Board convened in its capacity as the fence viewers of Aubry Township, Johnson County. All five county commissioners were present, as well as Johnson County's Chief Counsel Don Jarrett and assistant county counselor Cynthia Dunham. The Board met in an open meeting, which was recorded and transcribed. The Board asked several legal questions, which were answered at the meeting by the chief counsel or the assistant county counselor. Additionally, prior to the meeting, the Board's counsel prepared a memorandum with proposed findings and conclusions, which was submitted to the Board for "discussion and comment purposes only." At the conclusion of the meeting, the Board unanimously denied the Kaplans' application and concluded that the Pieczentkowskis are not required to contribute to the cost of erecting or maintaining any of the fences. The Board's decision was set forth in a "Decision Concerning a Certain Fence Viewing in Aubry Township, Johnson County, Kansas," dated May 28, 1998. The decision was recorded in the Office of the Register of Deeds of Johnson County on July 6, 1998.

On June 24, 1998, the Kaplans filed a petition for judicial review of agency action pursuant to K.S.A. 77-601 *et seq.*, in the District Court of Johnson County, Kansas. A copy of the petition was mailed to the Johnson County clerk and was received by the clerk on June 29, 1998. The Kaplans did not serve a notice of appeal on or file a bond with the county clerk.

In response to the petition, the Board and the Pieczentkowskis filed motions to dismiss for lack of subject matter jurisdiction. In its October 6, 1998, memorandum decision, the district court rejected the grounds for dismissal argued by the Board and the Pieczentkowskis and held that the fence viewers' decision was appealable under the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*

Pursuant to the district court's ruling, the case proceeded as an agency appeal under the KJRA. All of the parties briefed the issues raised in the petition and an oral argument was held on February

25, 1999. By memorandum decision dated March 9, 1999, the district court found that the Kaplans had failed to establish that the Board's decision was arbitrary or capricious or the product of an improper interpretation of the law. As such, the district court affirmed the decision of the Board. The Kaplans have appealed, and both the Board and the Pieczentkowskis have filed cross-appeals raising lack of jurisdiction.

In the district court proceedings, the Board sought to dismiss the Kaplans' appeal on several grounds. The Board argued that the fence viewers' decision is not appealable, relying on K.S.A. 29-304 ("shall be final, conclusive and binding upon the parties, and upon all the succeeding occupants of the lands"). Further, the Board contended that because it is not a state agency, the KJRA does not apply. However, the district court held that the fence viewers' decision is appealable under the KJRA. To reach that holding, the district court concluded that the Board, when acting as fence viewers, was a state agency under the KJRA. The Board has cross-appealed the district court's rulings on these issues and continues to contend that both this court and the district court lack subject matter jurisdiction in this case.

We agree with the Board and hold we are without jurisdiction to hear this appeal.

We lack jurisdiction because the KJRA does not apply in this case. The act applies to state agencies; it does not apply to county actions. K.S.A. 77-602(k); *O'Hair v. U.S.D. No. 300*, 15 Kan. App. 2d 52, 57, 805 P.2d 40, *rev. denied* 247 Kan. 705 (1990); see also *Justice v. Board of Wyandotte County Comm'rs*, 17 Kan. App. 2d 102, 104-05, 835 P.2d 692, *rev. denied* 251 Kan. 938 (1992) ("Decisions rendered by political subdivisions of the state are not subject to review under this Act. K.S.A. 77-602(k). Neither the act nor the specific portion of the Act cited by the district court would provide the court with jurisdiction to review a decision by a board of county commissioners.").

K.S.A. 29-201 specifically provides that the county commissioners of each county shall be fence viewers and authorizes any two commissioners to act for the commissioners. The act was passed nearly 100 years before the legislature allowed counties to have

more than three commissioners. In 1976, the legislature authorized counties to use their home rule powers and have three, five, or seven county commissioners. K.S.A. 19-201. Johnson County expanded from three to five county commissioners. Coffey, Finney, Franklin, Sedgwick, and Seward Counties have also expanded to five commissioners. Wyandotte County has a unified government comprised of 10 persons. The remaining 98 counties have three commissioners.

Whether the legislature overlooked the fence viewer statutes when it authorized more than three county commissioners is immaterial in this case because the Johnson County commissioners chose to sit as a body and be controlled by majority rule. We conclude the legislature intended K.S.A. 29-201 to be the act of the county commissioners and not that of a state agency. Thus, the appellants must follow statutory procedure for appeals from county commissioners' actions.

K.S.A. 19-223 governs appeals from decisions of the board of county commissioners as follows:

"Any person who shall be aggrieved by any decision of the board of commissioners may appeal from the decision of such board to the district court of the same county, by causing a written notice of such appeal to be served on the clerk of such board within thirty days after the making of such decision, and executing a bond to such county with sufficient security, to be approved by the clerk of said board, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant."

The Kaplans' appeal should have been taken pursuant to K.S.A. 19-223. Having failed to follow K.S.A. 19-223, the trial court and this court are without jurisdiction to hear the appeal.

The legislature may want to revisit what is essentially a 132-year-old law. Most of the fence and fence viewers law was passed in 1868 and has had few modifications since. We do not reach a number of issues the parties have raised, several of which the legislature could clarify. For instance, K.S.A. 29-201 provides that the board of county commissioners in each county shall be fence viewers, any two of whom shall be authorized and empowered to act in that capacity. At the time the statute was enacted and for the next 100-plus years, each county had three commissioners. If only two of

the county commissioners sat as fence viewers, they had to agree on any action and then act; thus, their act was the act of a majority of the county commissioners. In 1977, the legislature authorized counties to have three, five, or seven commissioner districts. No change was made in K.S.A. 29-201 to require a majority to act. The legislature should look at this area and make any changes it deems appropriate.

The legislature could also make clear what, if anything, the parties to a fence viewing can appeal by virtue of K.S.A. 29-304. The last of four published cases in this area is a 1911 case, and the four cases (*Griffith v. Carrothers*, 86 Kan. 93, 119 Pac. 548 [1911], *Robertson v. Bell*, 36 Kan. 748, 14 Pac. 160 [1887], *Grey v. Edrington*, 29 Kan. 208 [1883], *Conklin v. Dust*, 3 Kan. App. 211, 43 Pac. 431 [1896]), leave many unanswered questions. Our population distribution has changed a lot since 1868, and the fence laws could be clarified as to what they are intended to apply to, especially in urban areas.

Appeal dismissed for lack of jurisdiction.