No. 99,791

BEN J. and LAVELLE FRICK, *et al.*, *Appellants*, v. CITY OF SALINA, KANSAS, A Municipal Corporation, *Appellee*.
(208 P.3d 739)

 Opinion filed June 5, 2009. 

*Joseph R. Borich, III*, of Leawood, argued the cause, and *Douglas J. Patterson*, of Leawood, was with him on the briefs for appellants.

*Jason B. Prier*, of Foth & Orrick, L.L.P., of Overland Park, argued the cause, and *Timothy P. Orrick* and *Anthony J. Orrick*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal requires us to determine the standard of review to be applied by a district court when considering an appeal from a determination of relocation benefits under the Kansas Relocation Assistance for Persons Displaced by Acquisition of Real Property Act, K.S.A. 58-3501 *et seq.* (Kansas Act). The district court rejected the displaced property owners' argument that K.S.A. 58-3509(a), which provides an "appeal to the district court shall be a trial de novo," entitled them to a new trial and determined the separation of powers doctrine required a limited scope of review that considered if the hearing examiner's determination of benefits was supported by substantial competent evidence.

We conclude the district court erred in applying the narrow scope of review that is applicable if an agency makes a purely administrative decision. Here, the hearing examiner performed a judicial function which a court can review de novo. Nevertheless, in prior cases addressing similar statutory provisions which have allowed a trial de novo on appeal from an administrative decision, this court has held that the district court should make independent findings of fact and conclusions of law based on the record before the administrative agency. Applying this precedent, we reverse the district court's decision and remand for application of this standard of review.

## Facts and Procedural Background

The City of Salina undertook a public improvement project, generally referred to as the North Ohio Street Improvement Project

(the Project), which involved the reconstruction of North Ohio Street, the construction of a bridge over the Union Pacific railway lines, and the redesign and reconstruction of appurtenant side roads. This Project required the City to acquire real property of Ben and Lavelle Frick, on which the Fricks operated a large retail complex that housed numerous businesses. After unsuccessful negotiations for the purchase of the property, the City acquired the property through the power of eminent domain. Court-appointed appraisers awarded the Fricks just compensation for the property, after which the Fricks appealed. The appeal was later dismissed by mutual agreement of the parties.

Meanwhile, the City advised the Fricks of general eligibility requirements and procedures for obtaining relocation benefits for their displaced businesses. The City and the Kansas Department of Transportation (KDOT) had entered into an agreement which governed the Project and provided, in part, that the City and KDOT would share the costs, duties, and responsibilities associated with all aspects of the Project. The City agreed that "it will, in its own name, acquire by purchase, dedication or condemnation, the rights of way, easements and access rights" necessary to complete the Project. Although no federal funding was allocated to the Project, the City and KDOT mutually agreed that the Kansas Secretary of Transportation would provide relocation assistance for eligible persons as defined in the federal Uniform Relocation Assistance Act Amendments of 1987 (Federal Act), 42 U.S.C. § 4601 et seq. (2006), and in accordance with our state counterpart, the Kansas Act, K.S.A. 58-3501 et seq.

The Federal Act and its implementing federal regulations, which are designed to minimize the adverse impact of displacement, apply only in situations where the displacement is a direct result of programs or projects undertaken by a federal agency or with federal financial assistance. 42 U.S.C. § 4621(a)(1) (2006). The Kansas Act was established in order to comply with the Federal Act. K.S.A. 58-3502 provides in part:

"Whenever any program or project is undertaken by the state of Kansas, any agency or political subdivision thereof, under which federal financial assistance will be available . . . and which program or project will result in the displace-

ment of any person by acquisition of real property . . . the state, agency, or political subdivision may:

"(1) Provide fair and reasonable relocation payments and assistance to or for displaced persons . . . .

. . . .

"(4) pay or reimburse property owners for necessary expenses as specified in . . . the federal act."

Attempting to meet these requirements in this case, the parties participated in extensive negotiations regarding relocation benefits. A team of relocation specialists examined the Fricks' relocation process on behalf of the City to determine any benefits to which the Fricks were entitled. The Fricks' requests for relocation benefits were eventually divided into two main categories—Category I consisted largely of move-out expenses and Category II consisted largely of reestablishment and reconnection expenses.

After working with the Fricks to obtain information on the relocation costs for their various businesses, the City paid the Fricks for the relocation of the personal property from the site, *i.e.*, the Category I move-out expenses. The Fricks, dissatisfied with the amount of the payment, appealed and requested an administrative hearing. As required by K.S.A. 58-3509, the City selected an independent hearing examiner to conduct a review of the City's determination of eligible relocation benefits. After the hearing was conducted, the City paid the Category II benefits, the Fricks timely appealed that award, and a second hearing was conducted. Following each hearing, the administrative hearing examiner issued separate decisions that in large part upheld the awards made by the City.

The Fricks appealed both administrative decisions to the district court, and the cases were consolidated. From the start, the parties disagreed about the standard of review to be applied by the district court. The Fricks contended that because the plain language of K.S.A. 58-3509 states that an appeal to the district court "shall be a trial de novo" on the issue of relocation benefits, they were entitled to a trial anew on the merits of the issue. The City argued that the Kansas Act for Judicial Review and the Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, controls and,

therefore, the district court's review had to be limited to the· administrative record.

The district court issued an order on September 6, 2006, finding that "under either statutory authority the scope of review remains essentially the same; *i.e.*, the court should review the record before the hearing [examiner] to determine if the decision is lawful, supported by the evidence, and reasonable, [not] arbitrary and capricious." The court ruled, however, that the Fricks would be permitted to present additional evidence relevant to the issue of "fair and reasonable relocation payments and assistance" as provided by K.S.A. 58-3502(1). The district court further determined that the KJRA does not apply to this case because the condemning agency and appointing authority is the City of Salina, and cities, by definition, as a political subdivision of the state, are not included in the coverage of the KRJA. Nevertheless, relying on Kansas case precedent, the district court held that because the Fricks sought review of an administrative action, the court's scope of review was limited in light of *Rydd v. State Board of Health*, 202 Kan. 721, Syl. ¶ 4, 451 P.2d 239 (1969). In *Rydd*, this court held that the separation of powers doctrine prohibits the legislature from imposing upon the judiciary "the function of a trial de novo of actions of an administrative agency in the sense of authorizing the court to substitute its judgment for that of the administrative agency in matters other than law or essentially judicial matters." 202 Kan. at 729. The district court, therefore, interpreted the term "trial de novo" in K.S.A. 58-3509 to mean a limited review of the administrative record.

Before trial, the Fricks filed their witness and exhibit lists which identified 24 witnesses and numerous exhibits. They also served 37 interrogatories and a broad request for the production of 27 documents. The City responded by filing a motion asking the district court to clarify its September 6, 2006, order. After conducting a hearing at which the parties argued their positions regarding the scope of review and the scope of discovery, the district court granted the City's motion to clarify and modified its previous order.

The district judge acknowledged that in the September 2006 order, "I was trying to have it both ways, make everybody happy,

and very often you can't do that. . . . It was not strictly administrative review, because the Court did allow for such other evidence as might be necessary to hear. . . . I think I was wrong on that." On June 19, 2007, the court entered its modified order which prohibited the Fricks from supplementing the agency record with "additional evidence relevant to the issue of fair and reasonable relocation benefits and assistance as provided by K.S.A. 58-3502(1)."

Subsequently, the district court reviewed the transcripts and exhibits of the administrative hearings and concluded that the hearing examiner's findings and conclusions in both written decisions were supported by substantial evidence and the law, including the federal regulations applicable to relocation benefits for displaced businesses. Consequently, the district court affirmed both decisions of the hearing examiner, denied additional relocation benefits to the Fricks, and incorporated by reference the examiner's decisions into the court's order.

The Fricks appealed and filed a motion to transfer their appeal to this court; the motion was granted.

## Analysis

Before us the Fricks contend that when they appealed the administrative hearing examiner's decisions regarding relocation benefits, they were entitled to receive a new trial on the merits, with the opportunity to conduct discovery, call new witnesses, and introduce evidence not included in the administrative record. They assert that the district court erred in refusing their requests and limiting the scope of its review.

### A. Standard of Review

Determination of the issue of what standard of review should be applied by a district court in an appeal from an administrative hearing examiner's decision regarding relocation benefits requires interpretation of the Kansas Act. Interpretation of statutes presents a question of law over which appellate courts exercise unlimited review. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176

P.3d 938 (2008); *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

When a court is called upon to interpret a statute, the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language it enacted. *In re Adoption of G.L.V.*, 286 Kan. 1034, 1040-41, 190 P.3d 245 (2008). For this reason, when the language of a statute is plain and unambiguous, courts "need not resort to statutory construction." *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007), *cert. denied* 555 U.S. 937 (2008). If the face of a statute leaves its construction uncertain, however, a court attempting to discern legislative intent may employ rules of statutory construction and look to the historical background of the enactment, the circumstances attending its passage, the purposes to be accomplished, and the effects the statute may have under the various constructions suggested. *In re Adoption of G.L.V.*, 286 Kan. at 1041; *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 768-69, 69 P.3d 1087 (2003).

These rules must be applied to the statutes governing the procedures for determining relocation benefits in order to determine the legislature's intent regarding the standard of review applicable to appeals of an administrative hearing examiner's decision.

### B. The Kansas Act

Under the Kansas Act, the condemning authority must determine the fair and reasonable relocation benefits that conform to guidelines in the Federal Act and provide notice of the benefits to the displaced person. K.S.A. 58-3508. Within 60 days of receiving notice of the determination of such benefits, any displaced person entitled to relocation benefits may appeal to the "state, agency or political subdivision." K.S.A. 58-3509. The state, agency, or political subdivision must appoint an "independent hearing examiner" to render a decision on the appeal. K.S.A. 58-3509.

The statutes do not outline the procedure to be applied in the hearing, but administrative regulations fill the gap. See K.A.R. 36-16-1 *et seq.* Under the regulations, the hearing examiner must provide at least 10 days' notice of a hearing. K.A.R. 36-16-6. The reg-

ulations also require that a record be made of the hearing, which is to be "conducted in such a manner as to give the appellant an opportunity to be heard upon relevant issues." K.A.R. 36-16-7. The regulations, speaking in terms of KDOT's rights, allow attorney representation, examination of witnesses, and the introduction of documentary evidence. Following the hearing, the hearing examiner is required to prepare a report, make findings and recommendations, and prepare a proposed order containing the findings of fact and conclusions of law for the approval of the Secretary of KDOT or the Secretary's designee. K.A.R. 36-16-7.

As a final due process step, any displaced person may file an appeal in district court within 30 days of the written order. "Any such appeal to the district court shall be a trial de novo only on the issue of relocation benefits." K.S.A. 58-3509(a).

These requirements also apply to all acquisitions of real property by a county, township, or city if federal or KDOT funds are used to acquire property for a highway, road, or street. See K.S.A. 58-3502; K.S.A. 58-3503; K.S.A. 58-3506; K.A.R. 36-16-21. K.A.R. 36-16-21(b) specifies that KDOT will administer the relocation funds "except as otherwise agreed between the department and the governmental entity involved."

These procedures provide a displaced person the due process typically associated with a trial, including a record. See *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 776, 133 P.3d 104 (2006); *Windholz v. Willis*, 1 Kan. App. 2d 683, 685, 573 P.2d 1100 (1977); *cf.* K.S.A. 20-302b(c) (making necessary distinction between "civil cases where a record was made of the action or proceeding before the district magistrate judge, [in which] the appeal shall be tried and determined on the record by a district judge," and appeals without a record which must have new trial). Had this process not be guaranteed, the nature of appellate review would change or even be impossible.

## C. Appeal by Trial De Novo

Even though the Fricks had the opportunity to present evidence to the hearing examiner and a review of the administrative record was possible on appeal, they argue that K.S.A. 58-3509(a) entitles

displaced property owners to a new trial with additional witnesses and evidence. In making this argument, the Fricks focus on the phrase "trial de novo" and point to the definition of a "hearing" de novo, which is "[a] reviewing court's decision of a matter anew, giving no deference to a lower court's findings. A new hearing . . . [is] conducted as if the original hearing had not taken place." Black's Law Dictionary 725 (7th ed. 1999). In response, the City focuses on the word "appeal" and argues that a broad interpretation of the de novo language conflicts with (1) provisions of the KJRA, (2) the Kansas Legislature's intent to follow the Federal Act and its implementing regulations, (3) the separation of powers doctrine, and (4) this court's strict construction of de novo administrative appeal statutes. Hence, we must consider whether any of these provisions or doctrines applies and, if so, how it influences our interpretation of the phrase in K.S.A. 58-3509(a) that states the "appeal . . . shall be a trial de novo."

### 1. *KJRA*

In the district court, the City argued that the KJRA controlled and limited the court's standard of review. Although the district court agreed that its review of an administrative action should be limited, it found that the KJRA was not applicable under the definitions of K.S.A. 77-602(a) and K.S.A. 77-602(k) because the City of Salina was involved in the current action.

K.S.A. 77-602(a) provides that under the KJRA, the term "agency" means "a state agency." K.S.A. 77-602(k) provides the definition of "state agency":

" 'State agency' means any officer, department, bureau, division, board, authority, agency, commission or institution of this state which is authorized by law to administer, enforce or interpret any law of this state *but does not include any political or taxing subdivision of the state,* or any agency thereof, or the judicial or legislative branch of state government." (Emphasis added.)

This court has reiterated what is contained in this plain statutory language—the KJRA does not apply to the actions of cities, counties, or other political subdivisions of the state. See, *e.g., Kaplan v. Board of Johnson County Comm'rs,* 269 Kan. 122, 125, 3 P.3d 1270 (2000); *Landau v. City Council of Overland Park,* 244 Kan. 257,

273, 767 P.2d 1290 (1989); Coffman, *Procedures Under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 et seq.*, 76 J.K.B.A. 21 (Feb. 2007).

Regardless, the City contends that the KJRA should apply to this case because the displacement of the Fricks' businesses resulted from a joint improvement project between the City and KDOT, a state agency. KDOT is a "department" of the State of Kansas under K.S.A. 2008 Supp. 75-5001, which also makes it a state agency under the K.S.A. 77-602(k) definition. The City argues that the KJRA would otherwise apply to KDOT and it should also apply to the City, which as the principal on the improvement project, decided to "step into the shoes" of KDOT and administer relocation benefits.

What cannot be ignored, however, is that under the agreement between the City and KDOT, the City was the principal in the Project and all property rights were to be acquired in the City's name. In compliance with this agreement, the City, not KDOT, was the condemning authority that actually acquired the Fricks' property. Thus, it was the City's action that caused the relocation expenses to be incurred, giving rise to the right to benefits, and in clear terms, the KJRA does not apply to city actions. The district court correctly concluded that the KJRA does not apply in this case.

## 2. *Federal Act*

Even if the KJRA does not apply, the City contends that a limited review should apply to the district court's consideration of the administrative hearing examiner's decisions regarding relocation benefits because of the Kansas Legislature's intent to follow the Federal Act, 42 U.S.C. § 4601 *et seq.* While the Federal Act itself does not apply in this case because federal funding was not utilized, the parties agree that the Kansas Legislature enacted the Kansas Act, K.S.A. 58-3501 *et seq.*, for the purpose of implementing the Federal Act by requiring Kansas agencies and departments to comply with its provisions when providing relocation payments and assistance. See K.S.A. 58-3501.

The City takes this concept another step and argues that although the Kansas Act does not specifically direct courts to do so,

the "consistent, harmonious and sensible conclusion" is that the legislature intended to apply the principles of administrative review that have been applied under the Federal Act. According to the federal courts, a denial of relocation benefits under the Federal Act is an administrative agency action that may be judicially reviewed under the federal Administrative Procedure Act (APA), 5 U.S.C. § 702 *et seq.* (2006). See *Starke v. Secretary, U.S. Dept. of Housing*, 454 F. Supp. 477, 480 (W.D. Okla. 1976).

Under the APA, " 'de novo review is appropriate only where there are inadequate fact finding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions.' [Citation omitted.]" *Kroger Co. v. Regional Airport Auth. of Louisville*, 286 F.3d 382, 387 (6th Cir. 2002); see also K.S.A. 77-619 (Under KJRA a court may "receive evidence, in addition to that contained in the agency record for judicial review, only if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding: [1] Improper constitution as a decision-making body; or improper motive or grounds for disqualification, of those taking the agency action; or [2] unlawfulness of procedure or of decision-making process.").

Usually, under the APA " '[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.' " *Kroger Co.*, 286 F.3d at 387 (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 36 L. Ed. 2d 106, 93 S. Ct. 1241 [1973]). The APA, like the KJRA, provides that a court will review an agency's findings of fact under a substantial competent evidence standard. Compare 5 U.S.C. § 706(2)(E) (2006) with K.S.A. 77-621(c)(7). In this case, the district court applied this standard, although through operation of the separation of powers rather than the KJRA. Nevertheless, the district court noted that the end result was the same—*i.e.*, under either chain of analysis the substantial competent evidence became the standard of review.

The City suggests this commonality and the intent to implement the Federal Act require use of the substantial competent evidence standard and a recognition that de novo review is available only in

the limited circumstances allowed under the APA. However, this argument is contrary to the plain language of K.S.A. 58-3509(a), which provides for a standard of review and states that standard as a "trial de novo." In contrast, the Federal Act does not mention a right to appeal, an omission which initially caused some uncertainty and gave rise to arguments that the Federal Act committed the determination of relocation benefits to the agency's discretion and the decision was not subject to judicial review. See, *e.g., Starke,* 454 F. Supp. 477. Federal courts have generally rejected this argument and concluded the APA applies. *E.g., Kroger Co.,* 286 F.3d at 387; *Starke,* 454 F. Supp. at 480; see 5 U.S.C. § 702 (2006) ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

The same framework could have been established in Kansas, at least when KDOT was the agency providing benefits. Had the Kansas Legislature followed Congress' lead, it could have said nothing about judicial review or about allowing an appeal to district court. Under that scenario, the standard of review specified in the KJRA would have applied to any determinations made by KDOT because by its express terms the KJRA "applies to all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions." K.S.A. 77-603(a). Furthermore, the legislature could have extended the substantial competent evidence scope of review to all projects covered by the Kansas Act, even if the displacement resulted from an action by a political subdivision of the state, by simply restating the standard found in K.S.A. 77-621(c)(7) and 5 U.S.C. § 706(2)(E) or incorporating one of those provisions. Yet, the Kansas Legislature adopted K.S.A. 58-3509(a), specifically allowing for an appeal rather than judicial review and stating that "[a]ny such appeal to district court shall be a trial de novo only on the issue of relocation benefits" rather than adopting the standard of review in the APA or KJRA.

By adopting this process, the Kansas Legislature clearly deviated from the Federal Act. Thus, even though there is clear expression of intent by the Kansas Legislature to implement the federal

scheme for relocation benefits, there is an equally clear adoption of a different standard of review for an appeal of the decision allowing relocation benefits.

### 3. *Separation of Powers Doctrine*

Next, the City argues true de novo review via a new trial is constrained by the separation of powers doctrine. Under this doctrine, even if a statute provides for de novo review, this court "has almost universally applied this doctrine of separation of powers to various appeal statutes providing for appeals *from purely administrative tribunals*, ruling that the court may not substitute its judgment on questions of fact for that of an administrative tribunal." (Emphasis added.) *Gawith v. Gage's Plumbing & Heating Co., Inc.*; 206 Kan. 169, 174, 476 P.2d 966 (1970).

In such a circumstance—*i.e.*, where the review is of a purely administrative action—the doctrine of separation of powers restricts a reviewing court to a limited form of judicial review, even if a statute provides for de novo review. This narrow standard of review protects against a court's intrusion into an agency's legislative or executive powers. Under this limited review:

" 'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.' " *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.*, 217 Kan. 546, 553, 539 P.2d 1 (1975) (quoting *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, Syl. ¶ 1, 436 P.2d 828 [1968]).

The district court applied this limited standard of review.

The Fricks do not disagree that the district court could properly review whether the tribunal acted fraudulently, arbitrarily, or capriciously and some of their allegations regarding bias toward the City could arguably fall withing this standard. Nor do they argue that the district court could not determine if the tribunal acted within the scope of its authority. Rather, the focus of their argument is on the second prong—whether the administrative order is substantially supported by evidence.

The Fricks argue that this standard does not apply if the subject of the de novo review is a judicial function of the agency, and the Fricks contend the City was performing a purely judicial function and that a trial anew should be allowed. For support, they advance *Stephens v. Unified School District*, 218 Kan. 220, 546 P.2d 197 (1975), where this court recognized that the legislature had the authority to impose a requirement on the district court to hear appeals from the Kansas Commission on Civil Rights (KCCR) by trial de novo. See K.S.A. 44-1011(b) (calling for a "trial de novo with or without a jury"). The district court in *Stephens* granted the parties unlimited discovery rights, "announced its intention to conduct a trial *de novo*, and directed the parties to file and exchange lists of witnesses." 218 Kan. at 223. Neither party offered any new evidence, however, and the matter was ultimately submitted to the district court on the record from the hearing before the KCCR.

On appeal to this court, the school district alleged "the trial court erroneously conducted a trial *de novo*, making its own findings of fact, drawing its own inferences from the record, and substituting its judgment for that of the administrative agency." 218 Kan. at 224. In finding that a review of the KCCR record *could* constitute a trial de novo under K.S.A. 44-1011, the *Stephens* court concluded that "when the legislature called for a trial *de novo* ('with or without a jury in accordance with the provisions of K.S.A. 60-238') it meant a trial where the issues of both fact and law would be determined anew." 218 Kan. at 232.

The *Stephens* court next examined whether the legislature could constitutionally impose de novo review on courts. Recognizing there have been numerous cases in which it was held courts *cannot* apply the de novo review standard to administrative decisions, the *Stephens* court distinguished those cases, stating that in each of them "the function of the agency being reviewed was one which has traditionally been regarded, or was determined to be, either legislative, executive, or a blend of the two—in other words, a purely 'administrative' function." 218 Kan. at 232; see, *e.g.*, *Neely v. Board of Trustees, Policemen's & Firemen's Retirement System*, 205 Kan. 780, 473 P.2d 72 (1970) (board administering funds established for benefit of public employees and their dependents);

*Rydd v. State Board of Health*, 202 Kan. 721, 451 P.2d 239 (1969) (licensing of child care home); *Foote*, 200 Kan. 447 (licensing of healing arts practitioner). Likewise, other cases have acknowledged the same principle through an applicable statute or the constitutional separation of powers doctrine. *Stephens*, 218 Kan. at 233; see, *e.g.*, *Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 492 P.2d 147 (1971) (tax assessment and valuation); *Strader v. Kansas Public Employees Retirement System*, 206 Kan. 392, 479 P.2d 860 (1971) (disability benefits); *Goetz v. Board of Trustees*, 203 Kan. 340, 454 P.2d 481 (1969) (pension benefits); *Bodine v. City of Overland Park*, 198 Kan. 371, 424 P.2d 513 (1967) (zoning); *Southwestern Bell Tel. Co. v. State Corporation Commission*, 192 Kan. 39, 386 P.2d 515 (1963) (utility rate fixing).

In contrast, where an administrative agency performs a purely judicial function, the separation of powers doctrine does not prevent a court from conducting a de novo review. *Stephens*, 218 Kan. at 236. Consequently, in order to decide which standard of review applied, the court had to determine whether the KCCR had conducted an administrative or judicial function. The *Stephens* court turned to *Gawith*, 206 Kan. 169, for guidance regarding a test to be utilized in determining if the agency had performed a judicial function.

In *Gawith*, this court discussed several tests. One test is "whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative agency must make." 206 Kan. at 178. Another test is "whether the function performed by the administrative agency is one that courts historically have been accustomed to performing and had performed before the creation of the administrative body. [Citations omitted.]" 206 Kan. at 178. The court then identified the "classic test," stating:

" 'A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power.' " 206 Kan. at 178 (quoting *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 226, 53 L. Ed. 150, 29 S. Ct. 67 [1908]).

Applying these tests, the *Gawith* court concluded that the director of workers compensation performs an essentially judicial function which the district court has jurisdiction and power to modify "as justice may require." 206 Kan. at 171. Therefore, it was held that K.S.A. 1967 Supp. 44-556, which authorized the district court to hear an appeal "de novo upon the record made," did not unconstitutionally delegate legislative or administrative functions to the judiciary, and the separation of powers doctrine was not violated. 206 Kan. 169, Syl. ¶ 6.

Based on this discussion of *Gawith*, the *Stephens* court determined that the KCCR's inquiry into the school district's alleged violation of the Kansas Act Against Discrimination was of the type that courts had traditionally made and was essentially judicial. It involved the receiving and weighing of evidence, the finding of facts, and the application of existing law to those facts to determine whether specific conduct of the defendant was unlawful. The court held, consequently, that K.S.A. 44-1011(b) requiring a trial de novo did not violate the separation of powers doctrine and was to be applied as written. 218 Kan. at 236.

The Fricks make a persuasive argument that the same conclusions apply here. The determination of relocation benefits is essentially an evaluation of the damages incurred as a consequence of a property owner being displaced; in making the damages determination, the administrative hearing examiner receives and weighs evidence and is charged with making findings of facts and conclusions of law. These are functions that could have been given to a court and are functions that courts historically have performed. Moreover, applying the classic test, a hearing examiner investigates, declares, and enforces liabilities arising on present or past facts and under already existing laws. 218 Kan. at 233-35; see *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 763, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988). Thus, each of the tests is satisfied, leading us to conclude that an administrative hearing examiner who determines relocation benefits under the Kansas Act performs a judicial function.

### 4. *Strict Construction of De Novo Administrative Review Statutes*

This does not necessarily mean the Fricks can present new evidence, however, because, even when an administrative agency has performed a judicial function, this court has held that statutes providing for de novo review on appeal from an administrative action must be construed strictly. *E.g., Nurge v. University of Kansas Med. Center*, 234 Kan. 309, 316, 674 P.2d 459 (1983). In fact, although de novo actions have been recognized when the prior proceeding is a nonagency action (see, *e.g., Rural Water District No. 2 v. City of Louisburg*, 288 Kan. 811, 207 P.3d 1055 (2009), the Court of Appeals in addressing appeals from administrative agency decisions, has stated: "[T]he Supreme Court has not interpreted any statute to allow true de novo review in the sense of a new trial on facts and issues as though they had never been tried." *Angle*, 12 Kan. App. 2d at 765.

These cases recognize that when a statute provides for trial de novo on appeal there is an ambiguity because, in natural and ordinary usage, an appeal does not signify a new, original action; it signifies a review of an existing decision. In light of this ambiguity and because de novo review statutes relating to administrative actions are construed strictly, unless there is an explicit legislative direction otherwise, generally a provision for de novo review does not alter the appellate nature of the district court's authority on appeal, but rather it specifies the procedure to be employed. *Nurge*, 234 Kan. at 316; *Wurtz v. Cedar Ridge Apts.*, 28 Kan. App. 2d 609, 614, 18 P.3d 299 (2001); see also *United States v. First City Nat. Bank*, 386 U.S. 361, 368, 18 L. Ed. 2d 151, 87 S. Ct. 1088 (1967) ("It is argued that the use of the word 'review' rather than 'trial' indicates a more limited scope to judicial action. The words 'review' and 'trial' might conceivably be used interchangeably. The critical words seem to us to be 'de novo' and 'issues presented.' They mean to us that the court should make an independent determination of the issues."); 3 Koch, Admin. L. & Prac. § 10.2, pp. 21-22 (2d ed. 1997) ("As a practical matter, the term de novo review does not demand a judicial retrial or even extensive judicial record making. Rather the agency record remains the focal point of the conflict as it does in true review.").

Many of the cases following this strict construction rule were discussed in *Nurge*, in which this court further clarified the *Stephens* decision and considered the ambiguity of having an appeal be determined by a trial de novo. The *Nurge* court held in part that the trial court's statutory power under K.S.A. 44-1011 to hear "additional evidence on any issue" did not include the power to disregard, in whole or in part, the KCCR record by requiring all witnesses to retestify live before the court. Instead, the court held it is the duty of the district court in an appeal under K.S.A. 44-1011 to conduct an independent and thorough examination of the record and make independent findings of fact and conclusions of law based on the record. 234 Kan. 309, Syl. ¶ 6.

In arriving at this holding, the *Nurge* court examined various Kansas cases in which the meaning of trial de novo had been discussed in the context of K.S.A. 44-1011. One case was *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 775, 648 P.2d 234 (1982), where this court stated: "It seems apparent from the statutes that neither the proceedings before the KCCR nor the appeal proceedings before the district court contemplate a truly evidentiary jury trial. Review proceedings on the record supplemented with additional evidence would not appear to be an evidentiary jury trial under constitutional guidelines."

The *Nurge* court also examined *Flanigan v. City of Leavenworth*, 232 Kan. 522, 657 P.2d 555 (1983), where the issue was the dismissal of an appeal from the KCCR based upon the statute of limitations and because of delay in bringing the matter to trial in the district court. The *Flanigan* court stated:

"Although the matter is, in theory, tried 'anew,' the specter of the first trial looms in the background. Indeed, even though the statute labels the appeal a 'trial de novo' the proceedings are still in the nature of a 'judicial review' of the KCCR order. K.S.A. 44-1011. And, as the court stated in *Stephens*, the 'trial de novo' is 'limited to those issues fairly raised in an application for rehearing before the commission.' " 232 Kan. at 528.

The *Flanigan* court also recognized that a de novo proceeding under K.S.A. 44-1011 "has elements of both an original action and an appeal" and that one of the elements of a valid de novo review, as previously identified in *Stephens*, is an independent examination

of the record. *Flanigan*, 232 Kan. at 529; see *Nurge*, 234 Kan. at 315.

After examining these previous cases, the *Nurge* court concluded that the essence of an appeal under K.S.A. 44-1011 is a review of the KCCR proceedings, "a review in which an independent but thorough examination of the KCCR record is of primary importance." 234 Kan. at 315-16. The court noted that the idea that a reviewing court is materially bound to the record of a lower tribunal is fully supported by other decisions outside the field of civil rights. Moreover, the *Nurge* court noted that the general character of appellate procedure requires a court of error and review, with the power to affirm, reverse, or modify the judgment appealed from, "must decide the questions presented *as they arise upon the record*." 234 Kan. at 316. "[A] full trial de novo would be an anomaly," stated *Nurge*, "and can take place only by virtue of express authority." 234 Kan. at 316.

The *Nurge* court then cited case law from Utah and observed that in the case of *D. & R.G.W.R. Co., et al., v. Public Service Commission, et al.*, 98 Utah 431, 100 P.2d 552 (1940), the question concerned a statute authorizing plenary review and instructing the courts to proceed as a trial de novo. This court found the following excerpt from the Utah case particularly enlightening:

" 'To review an action is to study or examine it again. Thus, "trial de novo" as used here must have a meaning consistent with the continued existence of that which is to be again examined or studied. If, in these cases, the first meaning were applied to the use of the term "trial de novo" [(1) a complete retrial upon new evidence] then one could not consistently speak of it as a review, as the Commission's action would no longer exist to be re-examined or re-studied. There would be no reason for making the Commission a defendant to defend something that had been automatically wiped out by instituting the district court action.' " *Nurge*, 234 Kan. at 317 (quoting *D. & G.W.R. Co.*, 98 Utah at 437-38).

The Utah court concluded that use of the term "trial de novo" by the legislature was meant only to increase the scope of the court's review of the agency's record to include questions of fact as well as questions of law. 98 Utah at 438.

With these thoughts in mind, the *Nurge* court found that the appellate nature of a de novo action under K.S.A. 44-1011 is clearly

predominant, as shown by the legislature's retention of numerous statutory references to appeal and review even after the addition of the term "trial de novo" in 1965. 234 Kan. at 317. Therefore, the *Nurge* court held, the change intended to be made by the de novo phrase "was a widened scope of review, including issues of both law and fact to be determined anew, rather than any sweeping changes in the fundamental nature of the proceeding itself. [Citation omitted.]" 234 Kan. at 317.

After the decision in *Nurge*, this court has applied the holding and reaffirmed that the term "de novo trial," when used in the context of an appeal from an administrative decision, does not mean new evidence can be introduced unless explicitly stated in the statute. For example, in *Reeves v. Equipment Service Industries., Inc.*, 245 Kan. 165, 777 P.2d 765 (1989), the court reiterated the *Gawith* holding that the director of workers compensation performs a judicial function and stated:

> "In spite of the term 'trial de novo,' this court has clearly and consistently held that the district court is bound by the record made in the administrative proceeding and cannot accept additional evidence. *Casebeer v. Casebeer*, 199 Kan. 806, 815, 433 P.2d 399 (1967). Although bound by the administrative record, the district court has the jurisdiction and duty to make an independent adjudication of the facts and the law. *Reichuber v. Cook Well Servicing*, 220 Kan. 93, 95, 551 P.2d 810 (1976). The consistent holding that the record on review is that developed by the administrative agency while the scope of review allows a complete review of the record to make an independent adjudication on the facts and law makes use of the term 'trial de novo' unfortunate but harmless. A trial de novo on the record is a more accurate description." 245 Kan. at 171.

Nevertheless, this court has recognized that there can be a departure from the *Nurge* standard of review—*i.e.*, where a court makes independent findings of fact and conclusions of law based on the administrative record—if a statute clearly expresses a legislative intent to allow new evidence. See, *e.g.*, K.S.A. 2008 Supp. 8-259(a) (A driver's license suspension appeal "shall be by trial *de novo* to the court. The court shall take testimony and examine the facts."). Even then, the review has been limited to the issues raised before the administrative agency. *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 774, 148 P.3d 538 (2006); *Angle*, 12 Kan. App. 2d at 764-65.

An example of a clear expression of a legislative intent to allow additional evidence on appeal is found in a statute relied upon by the Fricks—K.S.A. 2008 Supp. 26-508(a), which provides for a trial de novo on appeal from an appraisers' award under the Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.* This statute has been interpreted as allowing a new trial in the district court. The Fricks suggest that the trial de novo provision of K.S.A. 58-3509 should be interpreted in a manner consistent with the appeal provision of an eminent domain proceeding. They reason that both rights—the right to receive fair market value and the right to receive relocation benefits—stem from the same governmental action and, therefore, the same standard of review should apply. The Fricks do not acknowledge several distinctions, however.

First, the eminent domain proceeding before the appraisers is a judicial proceeding as evidenced by several provisions: (a) The proceeding is initiated by filing a petition in district court (K.S.A. 2008 Supp. 26-501); (b) condemnation cannot proceed until the district court makes findings, specifically finding that the condemning authority has the power of eminent domain and that the taking is necessary to fulfill a lawful corporate purpose of the condemning authority (K.S.A. 2008 Supp. 26-501); and (c) if these determinations are made, the court appoints three appraisers (K.S.A. 2008 Supp. 26-504), and instructs them, among other things, that "they are *officers of the court* and not representatives of the plaintiff or any other party." (Emphasis added.) (K.S.A. 2008 Supp. 26-505[1].)

Second, the eminent domain procedures do not require that a record be made of the appraisers' hearing, see K.S.A. 2008 Supp. 26-506; thus an appeal based on a review of the record is impossible.

Third, in contrast to the applicable statute in our case, K.S.A. 2008 Supp. 26-508(a) further provides: "The appeal shall be docketed as *a new civil action*, the docket fee of a new court action shall be collected and the appeal shall be *tried as any other civil action.*" (Emphasis added.) See *Miller v. Glacier Development Co.*, 284 Kan. 476, 499-500, 161 P.3d 730 (2007) (discussing 26-508 in context of civil trial); see also *Rural Water District No. 2 v. City of*

*Louisburg*, 288 Kan. 811 (allowing de novo trial under K.S.A. 12-527 after appraisers' award where legislature allowed dissatisfied party to "institute an action"). We do not have this similar language in the statute at hand.

Further, if we were comparing two statutes allowing for appeals from an administrative proceeding—one worded like the eminent domain procedure stating the appeal shall be a new action and tried like any civil case and the other worded like K.S.A. 58-3509(a) stating that the appeal shall be by trial de novo—an interpretation that the former statute allows a new trial while the latter does not would be consistent with prior decisions that recognize that additional evidence can be admitted on appeal if the legislature explicitly allows. Nevertheless, under the holdings of these cases, if there is not an explicit indication that additional evidence should be allowed on appeal, the district court's review is to be based on the administrative record and the court is to make independent findings of fact and conclusions of law.

These rules, which were fully discussed in the 1983 decision in *Nurge*, have been applied consistently for decades prior to the 2004 enactment of K.S.A. 58-3509. See L. 2004, ch. 110, sec. 9. Thus, these principles were well-established law in Kansas when the K.S.A. 58-3509 right of appeal was considered by the legislature, and courts presume the legislature acts with knowledge of existing statutory and case law when it enacts legislation. *State ex rel. Board of Healing Arts v. Beyrle*, 269 Kan. 616, 629, 7 P.3d 1194 (2000). Consequently, when the legislature chose to make repeated references to the terms "appeal" and "notice of appeal" and to use the phrase "trial de novo" in the K.S.A. 58-3509, as it had in the statute construed in *Nurge* (K.S.A. 44-1011) and other similar statutes, we presume the legislature intended the scope of review to be as applied in *Nurge* and similar cases, as previously discussed. Because of this presumption, the precedential value of *Nurge* and similar cases cannot be set aside even though we recognize the sound points made in the concurring opinion. Consequently, we apply the *Nurge* holding to K.S.A. 58-3509(a).

This means that the district court was correct to impose limitations to its review rather than grant an entirely new procedure as

requested by the Fricks, but the court was in error in applying the substantial competent evidence standard. Rather, in considering the appeal under K.S.A. 58-3509(a), the district court should have made independent findings of fact and conclusions of law regarding the question of relocation benefits based upon the record of proceedings before the administrative hearing examiner. This case must be remanded for a consideration of the record in light of the correct standard of review.

Because we reach this conclusion we need not discuss the Frick's alternative argument that the district court erred in affirming the relocation benefits determinations of the City and the hearing examiner.

Reversed and remanded with directions.

McFARLAND, C.J., and NUSS, J., not participating.

LARSON, S.J., and HILL, J., assigned.

JOHNSON, J., concurring: I concur in the result reached by the majority; the case must be reversed and remanded for the district court to apply the standard of review explicitly set forth in the applicable statute, *i.e.*, "a trial de novo only on the issue of relocation benefits." K.S.A. 58-3509(a). I write separately to express my frustration with the court-created confusion as to the meaning of the term "trial de novo," which literally means "new trial." I dare say that both lawyers and laypersons fully comprehend what it means to be granted a new trial. Simply using Latin phraseology should not change the term to mean whatever procedure the court deems appropriate under the circumstances.

I can understand the motivation for altering the meaning of trial de novo where the separation of powers doctrine is implicated because of the court's duty to construe a statute in such a manner

that it will be constitutionally valid. See *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629-30, 176 P.3d 938 (2008). However, even where the court is attempting to comport with that duty, it "may not rewrite a clear and unambiguous statute to make it pass constitutional muster." 285 Kan. at 630; see also *State v. Marsh*, 278 Kan. 520, 538-39, 102 P.3d 445 (2004) (interpretive canon that statutes should be construed to avoid constitutional questions is not a license for the judiciary to rewrite language enacted by the legislature), *rev'd on other grounds Kansas v. Marsh*, 548 U.S. 163, 165 L. Ed. 2d 429, 126 S. Ct. 2516 (2006). Arguably, in those prior cases where the legislature's provision for a trial de novo review of an agency's purely administrative action offended the constitutional doctrine of separation of powers, the "appropriate judicial solution" was to hold that the statute was unconstitutional and let the legislature resolve the matter. *Marsh*, 278 Kan. at 540 (citing Justice Davis' dissent in *State v. Kleypas*, 272 Kan. 894, 1125, 40 P.3d 139 [2001]).

Nevertheless, as the majority acknowledges, the separation of powers doctrine is not applicable in this case, and we need not employ the " 'avoidance doctrine' " or the " 'rule of constitutional doubt.' " See *Marsh*, 278 Kan. at 538 (applying labels to the interpretive canon of construing a statute to avoid constitutional questions). Therefore, our first task is simply to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

I submit that K.S.A. 58-3509(a) plainly says that Ben and Lavelle Frick get a new trial on the issue of relocation benefits. Moreover, the term "trial" is ordinarily understood to mean the presentation of evidence and witnesses before a factfinder, not a judicial review of a record of a prior proceeding. See *Nurge v. University of Kansas Med. Center*, 234 Kan. 309, 319, 674 P.2d 459 (1983) (Schroeder, C.J., dissenting; right to jury trial means a trial with live testimony, where possible). The majority finds precedent for departing from the ordinary meaning of new trial because of a perceived ambiguity created by the use of the term "appeal," in conjunction with the term "trial de novo." Under that rationale, an actual, commonly

understood new trial should never be possible where the authorizing statute designates the subsequent procedure as an appeal. However, the word "appeal" appears in K.S.A. 22-3609(1), which grants a municipal court defendant "the right to appeal to the district court," and in subsection (4), which speaks to "the trial of municipal appeal cases." Yet, in that instance, the trial in district court starts from scratch; the evidence must be presented anew, live and in person. Granted, that statute addresses an appeal from a judicial action rather than an appeal of an agency's action. However, the point is that the word "appeal," alone, does not create any ambiguity in that context as to what is meant by the word "trial."

Utilizing the word "appeal" to create an ambiguity is even more curious with respect to the version of trial de novo manufactured by the *Nurge* majority and adopted by the majority in this case. Under that version, the term "trial de novo" means, *inter alia*, that the district court is to make independent findings of fact, but that such findings must be gleaned solely from the record of the administrative hearing examiner's proceedings. Factfinding in appellate jurisprudence is an anathema. See *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007) (an appellate court does not redetermine questions of fact). As pointed out by the dissent in *Nurge*, "[a]ssessing the candor and credibility of witnesses is seriously handicapped without seeing the demeanor and hearing the live testimony of the witness." 234 Kan. at 320 (Schroeder, C.J., dissenting). "The reading of a cold written record does not permit the court or a jury to determine the credibility of witnesses." 234 Kan. at 320 (same). Yet, that is precisely what we are asking the district court to do—make independent findings of fact from a cold written record.

I would prefer not to continue the fiction of creating differing definitions of the plain and unambiguous term "trial de novo" based upon the appellate court's belief as to what the procedure should be. If the legislature says that an appeal is to be a trial de novo, then the appellant should get a new trial as we all know and understand that to be. If the legislature wants an appeal to be a trial on the record of the agency proceeding, a substantial com-

petent evidence review of an agency record, or something other than a new trial, let it say as much.